520 P.2d 1178

Melisendro CHAVEZ, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Christy Construction Company, Respondent Employer,

Employers Mutual Liability Insurance Co. of Wisconsin, Respondent Carrier.

No. 1 CA–IC 916.

Court of Appeals of Arizona,
Division 1,
Department A.

April 16, 1974.

Rehearing Denied May 30, 1974.

Review Granted June 18, 1974.

Rabinovitz & Minker, P. C., by Bernard I. Rabinovitz, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Shimmel, Hill & Bishop, P. C., by Merton E. Marks and J. Russell Skelton, Phoenix, for respondent employer and respondent carrier.

OPINION

STEVENS, Judge.

The two basic questions presented in this review of the award of The Industrial Commission of Arizona are:

1.  Where there has been a partial laminectomy with the excision of a herniated nucleus pulposis resulting in a permanent anatomical change in the injured workman, can there be an award which finds the absence of a physical functional impairment or the absence of a percentage rating thereof attributable to the industrially related surgery?; and

2.  Where there is an error on the part of the employer in reporting the earnings of the injured workman and the Commission has issued its "notice of average monthly wage" (Form ICA 109) with a 60-day clause and the average monthly wage so determined has become "final" by reason of the absence of a request for a hearing made within the 60-day period, may the correct wage figure be shown and a new average monthly wage determination be calculated where there is a specific request for recomputation, which request is included in a timely request for a hearing relating to a later notice of claim status which was issued by the carrier?

Melisendro Chavez is the workman who sustained an industrially related injury to his low back on 9 July 1971. He will herein be referred to as the petitioner. Prior thereto, in 1966, he sustained a low back injury resulting in a surgical spinal fusion. As a result of the 1966 injury he received a permanent award of a 15% general physical functional disability with no loss of earning capacity. Thereafter the petitioner returned to heavy physical labor which he fully performed with occasional pain.

Following the July 1971 low back injury, the injury here in question, and on 4 August 1971, John W. McCracken, Jr. D. O., a neurosurgeon, performed:

"A partial laminectomy at the level of L4–L5 on the left, which was accomplished with the excision of a herniated nucleus pulposis."

In due time the carrier issued its notice of claim status terminating temporary compensation stating as its reason that the petitioner had been released for regular work. A timely request for a hearing was filed on 3 December 1971. A hearing was held. The hearing officer's award extended the period of compensation and medical benefits, and in other respects sustained the notice of claim status.

## PHYSICAL FUNCTIONAL IMPAIRMENT

■ The petitioner's treating physician and surgeon was Dr. McCracken who was the only witness as to the medical aspects of the case.

Dr. McCracken admitted that as an incident to the surgery, and in relation to the petitioner's presurgical body condition, there was a permanent change in the physical structure of the petitioner's body. The doctor was steadfast in his opinion that the petitioner's condition was stationary and

that as of the date of his final report, as well as a reexamination shortly before the hearing, there was no physical functional impairment causally related to the 1971 industrial injury and surgery. He was extensively examined in relation to the then applicable Industrial Commission Rule 13(d) [1] and in relation to the AMA guidelines.

We, as lay people, cannot say that the doctor's opinions are without foundation in medical fact.

## AVERAGE MONTHLY WAGE

There are four critical dates which we must consider. These are:

19 August 1971, the date upon which the Commission entered its "notice of average monthly wage". The notice contained a 60-day clause, the 60th day being 18 October 1971;

12 October 1971, the date of a carrier notice of claim status which terminated temporary compensation as of 13 October 1971 giving as the reason that "claimant released for, or has returned to, *light* work wage loss due to injury." (Emphasis added) This notice contained a 60-day clause;

12 November 1971, the date of a carrier notice of claim status which terminated temporary compensation as of 14 November 1971 giving as the reason that "claimant released for, or has returned to, *regular* work without wage loss due to injury." (Emphasis added) This notice contained a 60-day clause; and

3 December 1971 (46 days after the expiration of the 60-day period following the 19 August Commission notice on the fixing of the average monthly wage), through counsel, the petitioner filed a timely request for a hearing in relation to the 12 October and the 12 November carrier's notices of claims status. That request

---

[1]. "Rule 13(d) If upon discharge from treatment the physician finds that the employee has sustained an impairment of function as the result of the injury, he shall so state in his report. Any rating of the percentage of functional impairment shall be in accordance with the standards for the evaluation of permanent impairment as published by the American Medical Association in 'Guides to the Evaluation of Permanent Impairment.' It shall include a clinical report in sufficient detail to support the percentage ratings assigned."

further recited "applicant also objects to the earlier average monthly wage determination as being incorrect and based upon an obvious mistake * * *."

A.R.S. § 23–947 [2] makes express reference to A.R.S. § 23–1061. In Aetna Insurance Company v. The Industrial Commission of Arizona, 19 Ariz.App. 262, 506 P. 2d 653 (1973), this Court held that by virtue of A.R.S. § 23–1061(F) the 60 days commenced to run, not from the carrier's determination of the average monthly wage, but from the Commission notice.

In the past there have been average monthly wage cases which permitted exceptions to the finality of the Commission's wage notice, as for example, Garcia v. The Industrial Commission of Arizona, 13 Ariz.App. 128, 474 P.2d 847 (1970), and cases which did not permit an exception, as for example, Cowan v. The Industrial Commission of Arizona, 18 Ariz.App. 155, 500 P.2d 1143 (1972). In Garcia the error was detrimental to the employee and in Cowan it was detrimental to the employer. We must explain that the rationale of Cowan was a legal one and was not based upon the sustaining of a windfall to the employee.

The pattern of a series of successive final determinations in the processing of the claims of injured workmen is well established by Russell v. The Industrial Commission of Arizona, 104 Ariz. 548, 456 P.2d 918 (1969), and by Talley v. The Industrial Commission of Arizona, 105 Ariz. 162, 461 P.2d 83 (1969). In Talley the finality of the average monthly wage was considered.

The hearing officer permitted testimony from the petitioner and from the bookkeeper of the petitioner's employer. From the latter testimony it appears obvious to this Court that the report upon which the 19

August notice was based contained incorrect wage figures detrimental to the petitioner. The petitioner's testimony confirms that he believed that the average monthly wage figure was in error, that he believed that the figure contained in the notice represented the temporary disability payments he was to receive, that that figure did not conform to his understanding of the percentage that he was entitled to receive, and that he had inquired of the carrier but without success. The petitioner was further aware of the services which could be rendered by an attorney, this awareness arising out of his 1966 industrial injury.

The processing of the claims of injured workmen is hedged in by many technical time limitations following notices of claims status issued by carriers. The Court has commented on this before. Multiple notices issued in industrial matters can be confusing and complex even when a petitioner is represented by counsel. We categorized Garza v. The Industrial Commission of Arizona, 17 Ariz.App. 525, 498 P. 2d 599 (1972), as "the case of the multiple notices of claim status."

In Cowan, supra, and in Verdugo v. The Industrial Commission of Arizona, 14 Ariz.App. 79, 480 P.2d 996 (1971), this Court recognized that in the processing of the claims of injured workmen there is no provision for relief similar to Rule 60(c), Rules of Civil Procedure, 16 A.R.S. We cite our Verdugo opinion in this connection with the full realization that in an opinion by the same name, reported at 108 Ariz. 44, 492 P.2d 705 (1972), our opinion was vacated. We believe that the observation that relief by the Legislature is the appropriate remedy is still viable.

It is urged that in Parsons v. Bekins Freight, 108 Ariz. 130, 493 P.2d 913

---

2. "§ 23–947. Time within which hearing must be requested.

"A hearing on any question relating to a claim shall not be granted unless the employee has previously filed an application for compensation within the time and in the manner prescribed by § 23–1061, and such request for a hearing is filed within sixty days after the notice sent by certified mail under the provisions of subsection F of § 23–1061 or within sixty days of notice of a determination by the commission under § 23–1047 or § 23–1061. Added Laws 1968, 4th SS., Ch. 6, § 20, eff. Jan. 1, 1969, as amended Laws 1970, Ch. 137, § 14."

(1972), a workman's compensation case, the Supreme Court "opened the door" to broad ranging exceptions to the finality incident to failure to act within the 60-day period.

 In Trull v. The Industrial Commission of Arizona, 21 Ariz.App. 511, 520 P.2d 1188 (filed 16 April 1974), this Department of the Court of Appeals made an analysis of Parsons which differs to some degree from the analysis by Department B in its opinion entitled Taylor v. The Industrial Commission of Arizona, 20 Ariz.App. 46, 509 P.2d 1083 (1973). Applying our Trull analysis of Parsons, we hold that the statement of the hearing officer that the case at bar "does not fall within the rule of Parsons * * *" is a sound observation. In the case at bar and under the evidence it can well be held that the delay in the request to review the average monthly wage notice was excessive.

The award is affirmed.

DONOFRIO, P. J., and OGG, J., concur.