575 P.2d 340

Melisendro CHAVEZ, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Christy Construction Company, Respondent Employer,

Employers Mutual Liability Insurance Company of Wisconsin, Respondent Carrier.

No. 1 CA-IC 1667.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 20, 1977.

Rehearing Denied Jan. 30, 1978.

Review Denied Feb. 22, 1978.

Rabinovitz, Minker & Dix, P. C. by Bernard I. Rabinovitz, Tucson, for petitioner.

John H. Budd, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Lewis & Roca by Merton E. Marks and James B. Long, Phoenix, for respondents Employer and Carrier.

## OPINION

DONOFRIO, Judge.

This case comes to us for a determination of whether or not the hearing officer correctly determined that petitioner, Melisendro Chavez, suffered no permanent disability attributable to his industrial injury of July 9, 1971. This is the second time petitioner has been before this Court regarding his 1971 injury. Our earlier decision, *Chavez v. Industrial Commission*, 21 Ariz.App. 501, 520 P.2d 1178 (1974), affirmed a finding of no permanent disability and found that petitioner's failure to timely protest an average monthly wage determination by the Commission had resulted in that determination becoming final and *res judicata*. On review before the Supreme Court, however, petitioner prevailed and his untimely protest of the average monthly wage determination was excused. *Chavez v. Industrial Commission*, 111 Ariz. 364, 529 P.2d 1181 (1974). The Supreme Court adopted the Court of Appeals finding as to lack of permanent disability attributable to the 1971 episode, but because of its determination that the untimely protest should have been excused, it set aside the award of the Industrial Commission.

Two hearings *de novo* were held following the Supreme Court's decision at which petitioner and two physicians, Mark Frankel, M.D., and Melvyn L. Goldsmith, M.D., testified regarding petitioner's physical condition and the presence or absence of a permanent disability. Additionally, the deposition testimony of two out-of-state witnesses was received into evidence. This testimony concerned petitioner's job functions at the time of the hearing. Following these hearings, an award was issued by the hearing officer. Again, there was a finding

of no permanent disability, and there was a setting of petitioner's average monthly wage. After the award was affirmed on review, petitioner brought this special action which is limited to questioning the propriety of the hearing officer's determination regarding permanent disability.

Petitioner injured his back at the level of L4–5 in the course and scope of his employment with respondent, Christy Construction Company, on July 9, 1971. As a result, a partial laminectomy was performed by John W. McCracken, Jr., D.O., who later discharged petitioner without permanent impairment attributable to this injury. Petitioner had previously injured the same part of his back in an industrial episode in 1966, and he had undergone a laminectomy at that time as well. He was eventually discharged from that injury with a 15% disability, but returned to his regular employment without restrictions.

Dr. McCracken was the only medical witness at the hearing held prior to petitioner's first appeal and it was on the strength of this testimony alone that we were compelled to conclude the Commission's finding could not be disturbed on review by this Court as being without foundation.

Respondents have argued in their brief, and have maintained throughout these proceedings, that our earlier decision regarding the absence of a permanent disability constitutes the law of the case. They reason, therefore, that petitioner was not entitled to a new hearing on that issue, but was limited to the average monthly wage issue. We find this argument to be without merit. Respondent's reliance on *Janis v. Industrial Commission*, 27 Ariz. App. 76, 551 P.2d 66 (1976), is misplaced. We were there faced with a situation where our Supreme Court had set aside a finding by the Industrial Commission that it was without jurisdiction to consider a late request for review and ordered the Commission to consider whether the facts of that case warranted relief from failing to timely file the request for review. *Janis v. Industrial Commission*, 111 Ariz. 362, 529 P.2d 1179 (1974). As we stated in our opinion:

"We can find nothing in the Arizona Supreme Court's prior decision to indicate that it intended to set aside the prior award on the merits of the causation issues, since such issues are not even discussed in the opinion. Petitioner has had his hearing on the merits of the reasons for the delay, and in fact, after a finding by the hearing officer on this issue in his favor, the Commission has now proceeded to consider the petition for review on the causation merits which is what petitioner sought, and all he would have been entitled to, in the first instance." 27 Ariz. App. at 78, 551 P.2d at 68.

The instant case is one where the Commission's award was set aside on its merits since the average monthly wage issue had to be litigated in hearings before the Industrial Commission. We are, thus, in a situation common in Industrial Commission cases where the setting aside of an award on whatever basis entitled the petitioner to a complete hearing *de novo*. The appropriate rule relating to law of the case in such instances has recently been stated by this Court in *Employers Mutual Liability Insurance Company of Wisconsin v. Industrial Commission*, 115 Ariz. 439, 565 P.2d 1300 (App.1977) [Review Denied June 15, 1977] as follows:

"The effect of setting aside an award of the Commission results in the Commission conducting hearing *de novo* wherein new evidence bearing on the issues of the case may be presented. *King v. Alabam's Freight Co.*, 40 Ariz. 363, 12 P.2d 294 (1932). If on the new hearing the *facts* are not shown to be different, then the conclusion is that the Commission must follow the law already applied to substantially identical facts. *Kasprowiz v. Industrial Commission*, 20 Ariz.App. 116, 510 P.2d 427 (1973); *Neitman v. Industrial Commission*, 20 Ariz.App. 53, 510 P.2d 52 (1973). Correspondingly, if different *evidence* is presented in the hearings *de novo*, then the factual matter should be evaluated against this new evidence and the law of the case might well not be applicable since its application is condi-

tioned upon substantial identicality of facts, issues and evidence." 115 Ariz. at 442, 565 P.2d at 1303.

The Commission would only be bound by the law of the case doctrine here if the facts at the *de novo* hearing were the same as the facts previously presented.

Petitioner was entitled to present new evidence relating to the existence of a permanent disability. Since the evidence he presented was different in some respects from that at the original hearing in this matter, the hearing officer was not bound by the law of the case.

■ Turning to the substantive issues presented by petitioner, he initially attacks Dr. McCracken's failure to rely on the AMA Guides to the Evaluation of Permanent Impairment as required by Industrial Commission Rule 13(d) and our Supreme Court's opinion in *Adams v. Industrial Commission,* 113 Ariz. 294, 552 P.2d 764 (1976). *Adams* only requires that the AMA Guides be used to the extent that they cover the specific impairment and provide a percentage rating therefor. None of the physicians who testified felt that AMA Guides were useful in a situation such as this where there has been a re-entry into the same surgical level as was involved in petitioner's 1966 industrial injury. We agree and decline to require medical practitioners to follow the guides where there is unanimity that they are inapplicable to the problem in question.

The main thrust of petitioner's argument seems to be that the Commission should have awarded him a new permanent disability based on his 1971 injury. Both Dr. McCracken at the original hearing and Dr. Goldsmith at the later hearings testified that petitioner had suffered no new permanent impairment as a result of his 1971 industrial injury. Dr. Goldsmith testified that the 1971 incident constituted a temporary aggravation of the 1966 episode and that petitioner had returned "to essentially the same status and preceding [the 1971] episode." As we noted in an earlier opinion in this case, Dr. McCracken was likewise steadfast in his opinion that no new impairment resulted from the 1971 injury and we, as laymen, are unable to say that his opinion was without foundation.

Even Dr. Frankel, petitioner's medical expert, testified he would not rate petitioner's permanent impairment at more than 15%, although he would have attributed part of that to the injury in 1971.

■ Considering the evidence in the light most favorable to sustaining the award of the Industrial Commission (*Micucci v. Industrial Commission,* 108 Ariz. 194, 494 P.2d 1324 (1972)) and recognizing that it is the duty of the Commission to resolve conflicts in the medical testimony (*Graver Tank & Manufacturing Co. v. Industrial Commission,* 96 Ariz. 356, 395 P.2d 712 (1964)), we find that there was more than sufficient medical evidence to support the hearing officer's findings. We, therefore, affirm the award.

■ In view of our holding that the medical testimony alone is sufficient to support the award, it is unnecessary to discuss petitioner's other allegations of error.

The award is affirmed.

OGG, P. J., concurs.

JACOBSON, Judge, specially concurring:

I agree with the majority opinion as to the disposition of this matter on its merits. Moreover, I reluctantly agree that the hearing officer was required to hear the issue of permanent disability *de novo,* in spite of two appellate courts having already passed on this issue. This specially concurring opinion is written for the sole purpose, in the name of effective judicial administration, of again lamenting the sad state of affairs involved in judicial review of Industrial Commission awards.

In 1925, the Arizona legislature provided that review of Industrial Commission awards by the Arizona Supreme Court, would be limited to "enter[ing] judgment either affirming or setting aside the award."[1] The statute's effect is that if the

---

1. 1925 Ariz.Sess.Laws, Chap. 83 § 90 (superceded by A.R.S. § 23–951).

award is set aside, the parties are entitled to a hearing *de novo* before the Commission on the theory that the legal effect of the set aside is as though the award had never been entered. *Schnatzmeyer v. Industrial Commission,* 78 Ariz. 112, 276 P.2d 534 (1954); *Vidal v. Industrial Commission,* 8 Ariz.App. 244, 445 P.2d 446 (1968). The parties are entitled to a new hearing on all issues, even though in a multiple issue award, the appellate courts agree with the Commission on some but not all the issues presented. *Rutledge v. Industrial Commission,* 14 Ariz.App. 317, 483 P.2d 58 (1971), affirmed in part, vacated in part, 108 Ariz. 61, 492 P.2d 1168 (1972).

This case typifies the judicial and administrative waste brought about by the legislature's refusal to grant to the highest courts of this state the authority to modify or reverse in part or affirm in part awards of the Industrial Commission.

The claimant in this case was injured in 1971. As a result of hearings before the commission, it was determined (1) that claimant suffered no permanent disability as a result of the injury, and (2) that claimant had failed to timely protest a determination of average monthly wage. In 1974, this court in review of that decision (*Chavez v. Industrial Commission,* 21 Ariz.App. 501, 520 P.2d 1178 (1974)), held the evidence properly supported the commission's award that the claimant suffered no permanent disability. We also found claimant's protest to the determination of average monthly wage to be untimely. On petition for review to the Arizona Supreme Court (*Chavez v. Industrial Commission,* 111 Ariz. 364, 529 P.2d 1181 (1974)), that court agreed that claimant suffered no permanent disability attributable to the 1971 injury, but having determined that the untimely protest of the average monthly wage was excusable and having no authority to affirm in part or reverse in part, set aside the entire award.

On rehearing *de novo* before the commission, the issue of average monthly wage determination was disposed of rather summarily, but the hearing officer was compelled to rehear the issue of permanent disability. Because of this compulsion, the parties were required to incur additional expenses in attorney fees and taking out of state depositions. The hearing officer again concluded that the claimant had suffered no permanent disability.

So here we are in 1977, wrestling with an issue which this court and the Arizona Supreme Court considered and disposed of three years ago, and the issue which resulted in the award being set aside by the Supreme Court is not even before us, because it has been satisfactorily disposed of on an administrative level. By any standard, this is a "hell of a way to run a railroad."

Whatever the legislative reasons in 1925 were for limiting the scope of appellate review of Industrial Commission awards (reasons I suggest later have now disappeared), the consequences of that limited review must be weighed against the present ever burgeoning appellate case load. At this time, one third of the complement of Division 1, of the Arizona Court of Appeals (three out of nine judges) is primarily engaged in reviewing awards of the Industrial Commission. The entire filings in this court are increasing at the average yearly rate of approximately 17%. Civil litigants are waiting approximately 18 months after their cases are at issue for determination by this court. There is serious consideration being given to requesting the addition of three new appellate judges to this court (with an added increase to the taxpayers of approximately $140,000 annually).

I don't seriously argue that merely giving the appellate courts the same appellate review power over Industrial Commission awards as we have over other litigation is going to stem the tide of appellate business. However, limiting litigants to one appellate review of their contentions must result in a savings of appellate court time and effort. (I know of no legal or constitutional requirements which permit a litigant more than one appellate review of his or her contentions.)

Aside from the appellate judicial review savings, requiring the commission to rehear

issues previously determined (and affirmed by the appellate courts) results in increased administrative expense (translate taxpayer expense) and cost to the litigants themselves.

This court has no actual knowledge as to the cost to the commission and litigants in re-litigating issues previously determined by both the commission and the appellate courts, but if this case is any example, it must be substantial.

Again, aside from the savings in taxpayer and litigant dollars, I strongly suggest that the reason underlying limited appellate review of Industrial Commission awards has disappeared. In 1925 and up until 1973, awards of the Industrial Commission were being entered or at least reviewed by the commissioners themselves. These commissioners were and are now appointed by the governor, with the advice and consent of the senate. A.R.S. § 23–101, formerly 1928 R.C. § 1391. Presumably, these commissioners brought to the Industrial Commission an expertise in industrial matters and comprised a non-lawyer body to adjudicate rights of employees and employers. Arguably, the legislature had valid reasons to limit the scope of judicial review of such a body.

However, since 1974, awards of the Industrial Commission are being made by a single hearing officer (who review his or her own award) and who must be a lawyer and a member of the State Bar A.R.S. § 23–108.02.

In short, this court is now reviewing one man decisions dealing with workmen's compensation. Why more sanctity should be afforded to decisions of appointed lawyer administrative hearing officers than are afforded to decisions of elected superior court judges or juries of our peers is simply beyond me.

The legislature must act to grant to the judiciary the power to review one man awards of the Industrial Commission in the same manner we review decisions of our superior courts.