654 P.2d 296

**DESERT INSULATIONS, INC.,** Petitioner Employer,

**Home Insurance Company,** Petitioner Carrier,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA,** Respondent,

**Alvin J. Markham,** Respondent Employee.

No. 1 CA–IC 2607.

Court of Appeals of Arizona, Division One, Department C.

Sept. 9, 1982.

Rehearing Denied Oct. 19, 1982.

Review Denied Nov. 23, 1982.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by J. Victor Stoffa, Phoenix, for petitioners.

James A. Overholt, Acting Chief Counsel, Indus. Com'n of Ariz., Phoenix, for respondent.

Jerome & Gibson, P.C. by Dominic A. Jerome, Don A. Fendon, Phoenix, for respondent employee.

## OPINION

EUBANK, Judge.

The respondent-employee Alvin Markham sustained an industrial injury on November 7, 1978, when he fell off a sawhorse and suffered a cervical (neck) sprain. He was treated conservatively by his attending physician, Howard Johnston, M.D., who eventually concluded that respondent's condition was stationary with a permanent impairment resulting from the injury. The petitioner-carrier, however, issued a notice of claim status terminating temporary benefits with no permanent impairment based on the report of Robert A. Johnson, M.D. A request for a hearing was filed by the respondent, and hearings were held to consider the various medical testimony.

The testifying physicians were in disagreement as to whether the subject injury had caused any additional impairment to respondent. At least two doctors testified that all of respondent's present physical problems were due to other, unrelated injuries.[1] Nevertheless, the administrative law

---

1. The testimony of Dr. John J. Kelly, M.D. is subject to varying interpretations. Since we do not believe that it is critical to this appeal, we shall not consider it in great detail.

judge resolved all medical conflicts in favor of respondent's treating physician, Dr. Howard Johnston, and issued an award finding a permanent partial impairment.

On appeal, petitioners contend that Dr. Johnston's testimony was insufficient in three regards: (1) it was internally inconsistent on the issue of respondent's stationary conditions; (2) it was based upon a faulty foundation; and (3) it failed to rate the percentage of impairment under the AMA guidelines. Thus, they argue, the testimony cannot support the award. For the reasons set forth below, we agree with petitioners and set aside the award.

 In order to prove a permanent partial unscheduled disability under A.R.S. § 23–1044(C), a· claimant must show that his condition is medically stationary. *See* A.R.S. §§ 23–1047(A); 23–1044(F); *Home Insurance Co. v. Industrial Commission,* 23 Ariz.App. 90, 93, 530 P.2d 1123, 1126 (1975). At times, proof of a permanent impairment will implicitly carry with it proof of a medically stationary condition. *See Smith v. Industrial Commission,* 113 Ariz. 304, 552 P.2d 1198 (1976); *Lawler v. Industrial Commission,* 24 Ariz.App. 282, 537 P.2d 1340 (1975). Nevertheless, there must be medical testimony to the effect that further medical treatment will not improve the condition. *Field v. Industrial Commission,* 128 Ariz. 425, 626 P.2d 155 (App.1981).

 On direct examination, Dr. Johnston testified as follows:

In my opinion, that man has a permanent impairment due to the November '78 injury. And when I make that statement, I'm cognizant of the fact that he has had prior injuries, one of which left him off of work for an extended period of time.

On cross-examination, however, the following occurred:

Q. [By Mr. Stoffa] In fact, you've expressed your agreement with the preliminary reports from Dr. Alway and his diagnosis?

A. [Dr. Johnston] Yes, I did. I must say that I am sitting here in a position where I feel that Mr. Markham did something in '78 that injured his neck, or aggravated his pre-existing arthritis and the cervical spondylosis, and he hasn't recovered from it. And I have been sitting here doing very little, waiting for him to recover, because I think he eventually will. But, as of this moment, I don't think he has.

Q. Doctor, you state that—did you state you are of the opinion that he could recover from the effects of this aggravation and that he probably would?

A. Yes.

Q. Have you always been of that opinion?

A. I have vacillated on it; . there's been times when I thought he was essentially over it, and other times when I think he isn't. I think it depends on how much he complains to me on the days he comes in.

After questioning by the parties had ended, the stationary date was determined as follows:

BY THE JUDGE:

Q. I mean to make these short.

You indicated, in December of 1980 his condition remained unchanged from what it was in November of 1980. And, you also saw him in January of '81.

When did his condition, in your opinion, become stationary? I still don't know, in my own mind.

A. [Dr. Johnston] I haven't said yet.

Q. Okay.

A. If I may look at my notes, I will try to give you a date on which I think he probably was stationary.

Mr. Hearing Officer, on 12 January 1981, I wrote something in my chart and wrote a note to the Commission. Although I did not mention closing his case on that date, that was what I was thinking about. And I think today, that I can say with some certainty, that I considered his condition stationary on 12 January 1981.

We must agree with petitioners that this testimony is equivocal on the issue of re-

spondent's stationary condition. Yet the administrative law judge relied upon it exclusively in finding respondent's condition stationary. We do not believe that this testimony was sufficient to support a finding of permanent (stationary) impairment. *Cf. Aragon v. Industrial Commission,* 14 Ariz.App. 175, 177, 481 P.2d 545, 547 (1971).

Furthermore, we must agree with petitioners that the foundation for Dr. Johnston's testimony was, at least in part, faulty. Apparently, Dr. Johnston was unaware that respondent had returned to work after the November 7, 1978 injury. He testified:

A. If he returned to his regular work, I think my opinion would be wrong.

\* \* \* \* \* \*

A. Prove to me that he's malingering; prove to me that he's lying and that he is really capable of going back to work, and has been, while I've been taking care of him.

\* \* \* \* \* \*

A. In other words, he hasn't gone back to work. Is that a fraud that he's perpetrating? Is he lying to me and telling me that he's hurting so badly that he can't go to work, when, in fact, that's not true? If you could prove that to me, I'm willing to change my opinion today.

Yet respondent admitted that he had, in fact, returned to work following the subject injury.

█ Petitioners correctly point out that medical testimony can be so weakened by proof of an inaccurate factual background that the testimony cannot be said to constitute "substantial evidence." *Russell v. Industrial Commission,* 98 Ariz. 138, 402 P.2d 561 (1965); *Barber v. Industrial Commission,* 25 Ariz.App. 486, 544 P.2d 703 (1976). Although we do not believe that this particular factual inaccuracy warrant-

ed complete disregard for Dr. Johnston's testimony, we do believe that this issue merited the attention of the administrative law judge in his findings. Apparently, no such attention was given in the instant case. Therefore, we conclude that the administrative law judge erred in resting his decision on Dr. Johnston's testimony without addressing this foundational problem.

Finally, Dr. Johnston did not rate respondent's impairment under the AMA guidelines in accordance with A.C.R.R. R4–13–113(D), *infra,* footnote 2. However, Dr. Johnston did testify:

Q. Would you be in a posture to rate that under Orthopedic Guides or A.M.A. Guides?

A. No, I haven't looked it up in the A.M.A. Guide. This might be a good place to utilize that, because he does have restriction of motion, which is what the A.M.A. goes on.

Thus, Dr. Johnston conceded that the AMA Guides are applicable to respondent's condition.

Respondent argues that a rating of impairment under the AMA guidelines is not mandatory. For this proposition, he cites the wording of A.C.R.R. R4–13–113(D),[2] and those cases which hold that the AMA guidelines are not exclusive means of rating impairment. *Smith v. Industrial Commission,* 113 Ariz. 304, 552 P.2d 1198 (1976); *Adams v. Industrial Commission,* 113 Ariz. 294, 552 P.2d 764 (1976). While we agree that *Smith* and *Adams* are applicable to the case at bar, they do not answer the specific question involved herein.

█ A.C.R.R. R4–13–113(D) does not require a rating of impairment, but requires that any such rating, if made, must be made under the AMA guidelines. In *Adams* and *Smith,* our Supreme Court held that this rule will not be interpreted to

---

2. A.C.R.R. R4–13–113(D) reads as follows:

D. If upon discharge from treatment the physician finds that the employee has sustained an impairment of function as the result of the injury, he shall so state in his report. Any rating of the percentage of functional impairment shall be in accordance with the standards for the evaluation of permanent impairment as published by the American Medical Association in "Guides to the Evaluation of Permanent Impairment". It shall include a clinical report in sufficient detail to support the percentage ratings assigned.

deprive a claimant of compensation simply because his particular impairment is not ratable under the AMA guidelines. Thus, the court held that the guidelines were not exclusive, and where they do not apply, other criteria can be used to rate the impairment. That is not, however, the situation here. There is no dispute here over the applicability of the AMA Guides to respondent's impairment. Therefore, his impairment must be rated, if at all, under the AMA guidelines. *Adams v. Industrial Commission, supra,* at 295–96, 552 P.2d at 765–66.

■ The question before us is whether respondent's impairment needs to be rated at all. We hold that it must be. In considering the matter of rating the percentage of impairment and disability, our Supreme Court has adopted the following definitions:

(3) *Evaluation (Rating) of Permanent Impairment.*—This is a function that physicians alone are competent to perform. Evaluation of permanent impairment defines the scope of medical responsibility and therefore represents the physician's role in the evaluation of permanent disability.

(4) *Evaluation (Rating) of Permanent Disability.*—In the last analysis, this is an administrative and not solely a medical responsibility and function. Evaluation of permanent disability is an appraisal of the patient's present and future ability to engage in gainful activity as it is affected by such diverse factors as age, sex, education, economic and social environment, in addition to the definite medical factor—permanent impairment.

A.R.S. § 23–1044(D) sets forth the other diverse factors to be considered in this evaluation.

*Smith v. Industrial Commission,* 113 Ariz. at 306 n. 1, 552 P.2d at 1200. Although it may be that the rating of impairment is "rela-

tively unimportant for unscheduled injuries," *Smith, supra,* at 307 n. 4, 552 P.2d 1201, it is nevertheless a factor to be considered under A.R.S. § 23–1044(D). Furthermore, it is a factor which must be established by expert medical testimony, according to the above quoted definitions. If, as here, the physician neglects to rate the impairment, then the "nature and extent" of the impairment cannot be properly considered by the administrative law judge in making his loss of earning capacity determination under A.R.S. § 23–1044(D).[3]

■ We are aware that our holding today might appear to be at variance with the following language found in *Pew v. Industrial Commission,* 20 Ariz.App. 113, 115, 510 P.2d 424, 426 (1973):

In establishing an unscheduled residual impairment, it is not required that a magic percentage figure be set forth. Relatively small percentage disability figures can result in a large loss of earning capacity and relatively large percentage disability figures can result in an absence of a loss of earning capacity.

However, our review of the *Pew* case shows that the issue presented therein was different than the case at bar. In *Pew,* the court was concerned with the finality of an award for permanent disability. The impairment was not rated, but the court held that the finding of impairment was entitled to *res judicata* effect. The instant award is not final; it is subject to review for legal error. We conclude that the failure to rate the impairment constitutes such error. Finally, since *Pew,* our Supreme Court has clarified the law by defining *impairment* by the AMA guidelines. This definition requires evaluation or rating by the physician; consequently, an opinion by the physician of impairment, without rating the impairment, is insufficient when timely challenged.

For the foregoing reasons the award is set aside.

HAIRE and CONTRERAS, JJ., concur.

3. In the instant case, the loss of earning capacity determination was not made in the award currently under review. Rather, it was reserved for later hearings. Petitioners, in their Request for Review, pointed out the lack of impairment rating, but the award was affirmed in full on administrative review. Consequently, we believe that petitioners adequately exhausted their administrative remedies in seeking a percentage rating of impairment.