722 P.2d 337

**W.A. KRUEGER COMPANY,**
**Petitioner Employer,**

**Fidelity & Casualty Co. of New York**
**c/o Underwriters Adjusting Co.,**
**Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF**
**ARIZONA, Respondent,**

**Christopher J. Puma,**
**Respondent Employee.**

**No. 1 CA–IC 3175.**

Court of Appeals of Arizona,
Division 1, Department D.

Oct. 8, 1985.

Lewis and Roca by Merton E. Marks and Stephen M. Bressler, Phoenix, for petitioners.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent Indus. Com'n of Ariz.

R.Y. Thrasher, P.C. by R.Y. Thrasher, Phoenix, for respondent employee.

## OPINION

HAIRE, Judge.

In this review of an award entered by the respondent Commission in a workers' compensation proceeding, two issues are presented. The first issue relates to the extent of a substituted administrative law judge's authority to modify on timely review an award entered by an administrative law judge who had resigned from office immediately after issuing the initial decision and award. Assuming that the substituted administrative law judge had the authority to modify the award under the circumstances presented in this case, the second issue concerns the legal correctness of the modification made by the substituted administrative law judge.

The relevant background is as follows. The respondent employee (claimant) herniated a cervical disk in an accident arising out of and in the course of his employment. Treating neurosurgeon Paul W. LaPrade,

M.D., performed a diskectomy to decompress the left C–7 nerve root. The normal consequence of this surgery is a narrowed disk space. The surgery appeared successful. A nerve conduction study and electromyography were normal. Physical examination revealed no weakness. Although the claimant continued to complain of neck pain, Dr. LaPrade expected progressive improvement. After discussing the case with a rehabilitation counselor, Dr. LaPrade concluded that within approximately two months the claimant should be able to return to regular work.

After the claimant learned of this prognosis, he began to complain of severe, disabling neck pain. Dr. LaPrade ran a battery of tests to determine the cause of these symptoms. All test results were normal. Because Dr. LaPrade considered the symptoms unusual and entirely subjective, he suspected that the claimant was malingering.

A surveillance film obtained by the carrier showed the claimant performing various physical activities without apparent discomfort and with normal range of neck motion. After viewing this film, Dr. LaPrade issued a report discharging the claimant without "permanent disability."

Relying on this report, the carrier issued a notice of claim status closing the claim. The claimant protested, asserting that he was not yet stationary or that he had a permanent impairment. Hearings were then conducted.

Dr. LaPrade testified that the claimant was stationary and unimpaired. Although he conceded that the American Medical Association Guides to the Evaluation of Permanent Impairment (Guides) provided for a 5% impairment for the surgical removal of a disk even if the removal had no residual or other effects, he disregarded the Guides because in his opinion the recommended rating was too liberal in this case:

"I mean, it's a guide. It is a key. I don't think—I don't believe those figures are etched in stone, and I think that occasionally we deviate a little bit, I think. Sometimes if somebody has a bad problem that renders an upper extremity virtually useless so they cannot perform their work, I think sometimes they don't suggest enough disability, and on the other hand I think that sometimes if somebody has a problem that can be corrected surgically and for all intents and purposes they are back to normal, I think it gives them too much permanent disability. So, it is just my own personal feeling and, you know, for what it is worth."

Orthopedic surgeon Joseph Gimble, M.D., who had examined the claimant twice, also testified. He had no diagnosis to explain the claimant's subjective symptoms, and he deferred to the treating physician's rating of impairment. Although he also confirmed that the Guides allow a 5% impairment for the surgery itself, he agreed with Dr. LaPrade that in his opinion this was only a guideline:

"I use the AMA Guides as a basis if I give you a rating, but a lot of times I'll let my impression of the patient in terms of how he is doing and how functional he is override the Guidelines in my estimation in my opinion.

"I will have patients that are functionally able to return and I don't give them a rating at all. I may be a little stricter in terms of rating than the average person might be, but I use the AMA Guidelines as a guide, as just what they say, Guidelines, and I don't stick to them and use them as a Bible."

The administrative law judge who heard the evidence then issued an award closing the claim without permanent impairment. Although the award made factual findings relevant to credibility, it drew no conclusion about the claimant's credibility. Rather, the award was based on the medical evidence:

"12. It is found that Dr. LaPrade was familiar and aware of the AMA Guidelines and that he stated that the AMA Guidelines did not cover these [sic] specific impairment or lack thereof of this individual case. Dr. LaPrade stated that in his opinion the guidelines were guide-

lines and that flexibility was allowed within the guidelines and that in his medical opinion the applicant had no permanent impairment causal [sic] related to the original industrial injury."

After issuing this award, the administrative law judge resigned, and a substitute administrative law judge was assigned for administrative review. *See generally* A.R.S. § 23–942(B). The claimant's request for administrative review argued that the initial administrative law judge had misinterpreted the Commission's rule and the cases interpreting it. The substituted administrative law judge entered a decision upon review, finding as follows:

"14. While Dr. LaPrade chose not to follow the AMA Guidelines with respect to rating impairment of applicant relative to his industrial injury, the AMA Guidelines must be employed where applicable. See *Desert Insulations v. Industrial Commission*, 134 Ariz. 148, 654 P.2d 296 (App.1982), *Adams v. Industrial Commission, supra.* Dr. LaPrade admitted that AMA Guidelines, would have found applicant had a 5% impairment since he had an operation for a herniated disc, without residuals. While it is true Dr. LaPrade found applicant had no permanent impairment because of no residuals following surgery and because he could not believe the applicant's complaints of pain following review of surveillance films, the AMA Guidelines are clear that applicant has an impairment of whole man of 5% even without residuals when a herniated disc has been removed by surgery.

"15. Dr. LaPrade's finding of no permanent impairment under case law and under AMA Guidelines is without foundation since applicant's injury was an injury involving removal of a herniated disc from spinal cord. Therefore, it is determined that such opinion cannot be used as basis for finding applicant had no permanent impairment relative to his industrial accident. *Desert Insulations v. Industrial Commission, supra.*

"16. Based on AMA Guidelines with respect to rating impairment, applicant had a 5% permanent impairment of whole man and his condition became medically stationary by June 15, 1983.

"17. Determination with respect to loss of earning capacity and amount of permanent partial disability compensation are matters for future administrative action."

Accordingly, the decision upon review awarded a 5% permanent impairment. The petitioning carrier and employer (carrier) then sought appellate review in this court.

█ We consider first the issue presented relating to the extent of the substituted administrative law judge's authority on review. In *Adams v. Industrial Commission*, 147 Ariz. 418, 710 P.2d 1073 (Ariz. App.1985), we thoroughly discussed a similar issue, and held that where an administrative law judge has entered an initial decision and award based upon a record involving substantial credibility issues, the initial award may not be reversed upon review by a substituted administrative law judge who has not heard the evidence, when the reversal is based upon the substituted administrative law judge's resolution of credibility issues in a manner different from the resolution reached by the initial administrative law judge.

The carrier urges that *Adams* applies in this case and mandates a reversal of the substitute administrative law judge's finding of a 5% impairment in his decision on review. However, contrary to the circumstances in *Adams,* our review of the record convinces us that the substituted administrative law judge's finding of a 5% impairment in this case was not based on credibility or factual determinations differing from those made by the initial administrative law judge. Here, as recognized by both administrative law judges, the uncontradicted medical testimony was to the effect that, apart from any rating requirement legally imposed by the Guides, claimant had *no* residual impairment resulting from his disk surgery. The issue resolved by the substituted administrative law judge on the request for review was therefore strictly a

question of law, and thus *Adams* is inapplicable.

Under A.R.S. § 23–942(B), in the event of the resignation of an administrative law judge, an award in a pending matter "shall be determined" by the chief administrative law judge or a substitute administrative law judge appointed by him.[1]

We hold that under this statute a substituted administrative law judge has the authority to decide all legal issues presented in a request for review, and based on his resolution of such legal issues, the authority to affirm, modify or reverse a decision and award entered by the initial administrative law judge. *See* A.R.S. § 23–943(F). We now consider whether the substituted administrative law judge correctly decided the legal issue presented to him in the request for review.

The dispositive legal issue is whether the Guides' 5% impairment rating for a surgical disk removal controls despite uncontradicted medical testimony that there was no residual impairment and that the Guides' rating overvalued the actual impairment. The carrier urges that the Guides control only if the medical experts agree that the recommended rating accurately reflects the actual impairment. The claimant answers by arguing that the Guides control if the impairment is ratable under them.

A.R.S. § 23–1044(G) authorizes the Commission to adopt rules for the rating of impairment.

The Commission rule adopted pursuant to that statutory authority provides:

"If upon discharge from treatment the physician finds that the employee has sustained an impairment of function as the result of the injury, he shall so state in his report. Any rating of the percentage of functional impairment *shall be* in accordance with the standards for the evaluation of permanent impairment as published by the American Medical Association in 'Guides to the Evaluation of Permanent Impairment'. It shall include a clinical report in sufficient detail to support the percentage ratings assigned." (Emphasis added). A.C.R.R. R4–13113(D) (Rule 13(D)).

In *Adams v. Industrial Commission*, 113 Ariz. 294, 552 P.2d 764 (1976), the Arizona Supreme Court held that, pursuant to Rule 13(D), the Guides "apply exclusively to the evaluation of permanent impairment to the extent that the AMA Guides cover the specific impairment and the percentage thereof." *Id.* at 295–96, 552 P.2d at 765–66. The employee in *Adams* had an industrially related hearing loss. Although the Guides covered this specific impairment, the treating physician testified that another rating standard "more closely reflect[ed] the amount of functional loss, including ... [the] loss in the normal function of conversation *not covered by the AMA Guides.*" *Id.* at 295, 552 P.2d at 765 (emphasis added).[2] In addition, the guide for evaluating hearing loss authorized the use of "sound clinical judgment" when objective observations were not readily available. *Id.* In *Adams* the court concluded that the Guides therefore did not control because they failed to fully rate the percentage of hearing loss.

Subsequent cases confirm that the Guides do not control if their coverage is limited. *See Cavco Industries v. Industrial Commission*, 129 Ariz. 429, 631 P.2d 1087 (1981) (Guides do not cover impairment from degenerative changes and loss of strength);[3] *Smith v. Industrial Commission*, 113 Ariz. 304, 552 P.2d 1198

---

1. A.R.S. § 23–942(B) provides:

   "In the event of the demise, resignation, retirement, termination of employment, or other incapacitation of the presiding administrative law judge, the award shall be determined by the chief administrative law judge or his appointee."

2. The Guides now cover hearing impairment for speech. *See* American Medical Association, *Guides to the Evaluation of Permanent Impairment* at 154 (1984).

3. The Guides now cover loss of strength caused by peripheral spinal nerve disorders. *See id.* at 74.

(1976) (Guides do not cover subjective complaints of pain);[4] *Chavez v. Industrial Commission,* 118 Ariz. 141, 575 P.2d 340 (App.1978) (Guides do not cover second laminectomy at same level). But if the Guides cover the impairment, it must be rated under them. *See Desert Insulations, Inc. v. Industrial Commission,* 134 Ariz. 148, 654 P.2d 296 (App.1982).

The carrier attempts to distinguish *Desert Insulations.* The medical expert in that case conceded that the Guides covered the impairment but merely failed to calculate the impairment rating. In contrast, in the present case the medical experts, although agreeing on the facts, simply disagree with the recommended rating. The purpose of the adoption of the Guides, however, was to eliminate this kind of dispute by adopting a standard which would lead, insofar as possible, to a uniformity in the rating of covered impairments.

The Guides indisputedly cover a surgically removed disk and provide for a 5% permanent impairment rating even if this condition causes no other residuals. We find nothing in the Guides for evaluating back impairment which authorizes the use of clinical judgment for the adoption of a lesser rating for such an impairment. We therefore hold that the substituted administrative law judge correctly concluded Rule 13(D) requires the adoption of a 5% impairment rating under the medical facts presented in this case.

The decision upon review correctly awarded a 5% permanent impairment. This finding in itself is not an award for compensation benefits. It merely permits the claimant to proceed to an assessment of his lost earning capacity. *See Hunter v. Industrial Commission,* 130 Ariz. 59, 61, 633 P.2d 1052, 1054 (App.1981).

The award is affirmed.

GRANT, P.J., and KLEINSCHMIDT, J., concur.

4. The Guides now cover pain "associated with peripheral spinal nerve disorders." *Id.* at 73.