NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

JOSE A. CUEVAS, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

PACESETTER MARKETING, INC., *Respondent Employer*,

WESCO INSURANCE COMPANY, *Respondent Carrier*.

No. 1 CA-IC 16-0040
FILED 3-2-2017

Special Action – Industrial Commission
ICA Claim No. 20153-270566
Carrier Claim No. 2036120-1

Jonathan Hauer, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Greenberg Law Center, LLC, Phoenix
By Justin A. Greenberg
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent Industrial Commission of Arizona*

Law Offices of Broening, Oberg, Woods & Wilson, P.C., Phoenix
By Jerry T. Collen, Kevin R. Myer
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

**¶1** This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review, finding the claim of the Petitioner Employee, Jose A. Cuevas ("Petitioner"), not compensable because Petitioner failed to establish by a reasonable preponderance of the credible evidence that he sustained an industrial injury arising out of and in the course of his employment with the Respondent Employer, Pacesetters. The administrative law judge ("ALJ") resolved the compensability issue in favor of Pacesetters and the Respondent Carrier, Wesco Insurance Company ("Wesco") (collectively, "Respondents"). For the following reasons, we affirm the award and decision upon review.

**FACTS AND PROCEDURAL HISTORY**

**¶2** Petitioner began working for Pacesetters in February 2015 as a "lead man." In that position, he was responsible for building high performance parts for automotive exhaust systems. His job required him to regularly lift metal assembly fixtures weighing between twenty and one hundred pounds.

**¶3** On November 19, 2015, Petitioner filed a claim for workers' compensation benefits, alleging he had injured his left leg and buttocks while lifting heavy equipment at work on September 3, 2015. Wesco denied Petitioner's claim for benefits.

**¶4** Petitioner protested the denial of his claim and requested a hearing, which was scheduled to determine whether the claim was compensable. At the hearing, the ALJ heard testimony from Petitioner and several of his former coworkers. Neither Petitioner nor Respondents presented medical testimony.

¶5          Petitioner testified that he injured himself at work on September 3, 2015, while lifting an assembly fixture from a box.  He stated he felt a "popping pain" in his back when he tried to lift the fixture.[1]  When he told his "first supervisor," Saul, that he hurt himself, Saul offered to write a work injury report for Petitioner in exchange for money. Petitioner's other boss, Ernesto Galindo, "blew [Petitioner] off."  As a result, Petitioner decided to "tough[] it out" and go back to work.

¶6          Petitioner continued to work his normal shift, but felt pain and tingling in his lower back down to his toes.  Petitioner told Ernesto and Saul of his injury "a couple more times," and Ernesto gave Petitioner ibuprofen for the pain.

¶7          Petitioner first obtained medical treatment for his injury on November 19, 2015.[2]  Dr. Seth Maxwell's report from that date indicates that Petitioner told him he had injured his left leg and buttocks at work while lifting heavy equipment.  At Petitioner's request, Dr. Maxwell completed a Physician's Report of Injury for the Industrial Commission.  Petitioner stated that he reported to work at Pacesetters on November 20, but did not return after that.[3]

¶8          Petitioner saw Dr. Kevin Ladin on December 4, 2015.  Dr. Ladin's medical report also indicates that Petitioner described the injury as work-related.[4]

---

[1]          Petitioner testified on direct examination that, after he lifted the object, he walked a few steps before placing the object on a stand.  On cross-examination and after Respondents' attorney impeached Petitioner with statements he made during a deposition, Petitioner clarified that he did not take any steps, and immediately dropped the fixture back in the box after feeling the "pop" in his back.

[2]          Petitioner stated that he had never had any problems with his back before September 3, 2015, and had not received any medical evaluation for back pain before November 19, 2015.

[3]          An employee report provided by Pacesetters indicates that Petitioner also worked on November 23 for four hours.

[4]          Dr. Ladin's report states, "[Petitioner] tells me that on 09/03/15 he was lifting some heavy equipment when he experienced an acute onset of left sided low back pain."

**¶9**      Three of Petitioner's former coworkers—including Eduardo Villa, Petitioner's nephew; Alex Herrera; and Ernesto Galindo, Petitioner's former supervisor—also testified at the hearing. Villa stated that, around September 5, 2015, he began to notice Petitioner had difficulty doing things around the house, and Petitioner told Villa he hurt himself at work.

**¶10**      Herrera testified that he often drove Petitioner to work, and Petitioner mentioned he hurt his back lifting something at work. But Herrera also stated that Petitioner mentioned having received some kind of treatment for his low back before September 2015.

**¶11**      Galindo testified that, at some point before September 3, 2015, Petitioner requested a back support belt, stating he had hurt his back at another job. Galindo also stated that, sometime between June and August 2015, Petitioner told Galindo he saw an unlicensed chiropractor to receive treatment for back pain. Galindo further testified that Petitioner offered him "compensation" in exchange for writing a work injury report for Petitioner.

**¶12**      After the hearing, the ALJ issued his award, finding Petitioner "failed to establish by a preponderance of the credible evidence that he sustained a personal injury arising out of and in the course of his employment with [the] defendant employer."

**¶13**      Petitioner requested review of the ALJ's award, and on June 17, 2016, the ALJ issued his decision upon review, supplementing and affirming the award. Citing *Desert Insulations, Inc. v. Indus. Comm'n*, 134 Ariz. 148, 654 P.2d 296 (App. 1982), the ALJ stated that because Petitioner was "not credible," the ALJ was "not bound to adopt medical findings premised on [the Petitioner's] described medical history."

**¶14**      Petitioner filed a timely petition for special action, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2016) and 23-951(A) (2012), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

## ANALYSIS

**¶15**      In general, a petitioner must establish all the material elements of his claim, including that his injury is causally related to an industrial incident. *See Estate of Bedwell v. Indus. Comm'n*, 104 Ariz. 443, 444, 454 P.2d 985, 986 (1969); *T.W.M. Custom Framing v. Indus. Comm'n*, 198 Ariz. 41, 45-46, ¶ 12, 6 P.3d 745, 749-50 (App. 2000). We defer to the ALJ's factual findings, but independently review any legal conclusions. *Young v. Indus.*

*Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). "The ALJ is the sole judge of the witness's credibility and may reject the testimony if it is self-contradictory, inconsistent with other evidence, or directly impeached." *Mustard v. Indus. Comm'n*, 164 Ariz. 320, 321, 792 P.2d 783, 784 (App. 1990) (internal citation omitted). "An award of the Commission will be affirmed if it can be supported by any reasonable theory of the evidence." *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46, 749 P.2d 1364, 1367 (1988).

**¶16** Petitioner contends the ALJ erred by "arbitrarily disregard[ing] the medical opinions" of his providers. In support of his argument, Petitioner relies on *Cammeron v. Indus. Comm'n*, 98 Ariz. 366, 405 P.2d 802 (1965) for the proposition that the ALJ cannot arbitrarily disregard uncontroverted medical opinions even where the ALJ finds the claimant not credible and the medical opinions are based in part on what the claimant told the physician. Although we agree with that general statement of the law, it does not apply to the facts in this case.

**¶17** In *Cammeron*, the petitioner's testimony was repeatedly discredited, but the undisputed medical testimony established that he had an underlying psychiatric condition that was triggered by his industrial injury. *Id.* at 369-71, 405 P.2d at 803-05. The ALJ disregarded this medical evidence and entered an award denying the petitioner compensation. *Id.* at 368, 405 P.2d at 802-03. But because the petitioner's psychiatric condition was "peculiarly within the realm of scientific knowledge" and the ALJ's findings were "a complete repudiation of the medical evidence in the record," the award was set aside. *Id.* at 370-71, 405 P.2d at 804-05.

**¶18** Here, in contrast, the doctors' opinions as to the origin of Petitioner's injury were not "peculiarly within the realm of scientific knowledge." Rather, the doctors merely documented in their reports that Petitioner told them he was injured at work. Neither were the ALJ's findings here a repudiation of any expert medical opinions. Instead, the ALJ rejected Petitioner's testimony regarding the origin of his injury, which the ALJ found not credible in light of the other evidence in the record. *See Wimmer v. Indus. Comm'n*, 15 Ariz. App. 543, 544, 489 P.2d 1245, 1246 (1971) (stating an ALJ may reject a claimant's testimony when inferences can be drawn from other evidence that casts doubt on its credibility); *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968) (stating the ALJ must draw warranted inferences and "where more than one inference may be drawn, the [ALJ] is at liberty to choose either, and this court will not disturb its conclusion unless it is wholly unreasonable") (internal citations

and quotations omitted). Because the ALJ's findings are supported by the record, we find no error.

**¶19** Petitioner next argues that the ALJ's reliance on *Desert Insulations* was misplaced.[5] But our review of that case leads us to conclude otherwise. In *Desert Insulations*, the ALJ's award in favor of the petitioner was set aside because the award relied on the opinion of a doctor to whom the petitioner had provided false information. *Desert Insulations*, 134 Ariz. at 151, 654 P.2d at 299. Petitioner contends that *Desert Insulations* is inapposite because, here, the record does not contain evidence that his doctors' opinions on causation were based on any factual inaccuracies. However, it is clear from Petitioner's doctors' medical reports that any cryptic comments on "medical causation" are based entirely on what Petitioner told them. The balance of these reports is limited to reflecting the results of a physical examination, a differential diagnosis of a medical condition that may explain the patient's subjective complaints and objective physical findings, and then recommendations as to a proposed course of treatment. Because Petitioner's version of the industrial event was unsubstantiated and because the testimony of the other lay witnesses created a conflict concerning the origin of Petitioner's injury, the ALJ was not required to accept Petitioner's testimony. *See Wimmer*, 15 Ariz. App. at 544, 489 P.2d at 1246; *Desert Insulations*, 134 Ariz. at 151, 654 P.2d at 299 (stating that medical testimony can be so weakened by proof of an inaccurate factual background that it cannot be said to constitute substantial evidence to support an award).

**¶20** We defer to the ALJ's factual findings, particularly as to his assessment of the credibility of Petitioner and the other witnesses. On this record, the ALJ did not err in finding Petitioner failed to meet his burden of proving a compensable claim.

---

[5] The ALJ cited *Desert Insulations* for the proposition that, "[a]s the trier of fact, the [ALJ] may accept or reject the applicant's testimony and, therefore, may accept or reject a medical opinion which assumes the truth of the medical history provided by the applicant."

**CONCLUSION**

¶21       For the foregoing reasons, we affirm the ALJ's award.



AMY M. WOOD • Clerk of the Court
FILED: AA

7