710 P.2d 1073

**George W. ADAMS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Rodney Amick and Mary Amick, his wife, dba Rod's Happy Rentals, Respondent Employer,**

**No Insurance, Respondent Carrier.**

**No. 1 CA–IC 3189.**

Court of Appeals of Arizona, Division 1, Department D.

July 11, 1985.

Motion for Reconsideration Denied Sept. 5, 1985.

Tretschok, McNamara & Clymer, P.C. by Patrick R. McNamara, Tucson, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Bury & Moeller, P.A. by J. Michael Moeller, Tucson, for respondent Employer and respondent Carrier.

## OPINION

MEYERSON, Presiding Judge.

The issue in this special action is whether an Industrial Commission award may be reversed on review by a substituted administrative law judge who did not personally observe the claimant testify. Because the claimant's credibility is crucial in this case, we hold the award upon review must be set aside.

I. FACTS

George Adams (claimant) filed a claim for a low back injury occurring on "approximately January 20, 1983," while employed by Rodney and Mary Amick, dba Rod's Happy Rentals (employer). The claim was administered by the No Insurance Division of the Industrial Commission which found the claim noncompensable. Claimant protested and requested a hearing which was granted.

In December, 1982, claimant was hired to maintain mobile homes leased to tenants by

his employer. Each day, claimant received his work instructions from Ms. Amick. Claimant kept handwritten logs of all work performed. Claimant stated that he began to have a backache following work on January 20, 1983. On that date, claimant loaded and unloaded furniture from a pickup truck, dug a ditch and laid floor tile. Claimant did not see a doctor immediately because the pain was only intermittent and he was also short of money. When his condition continued to worsen, he went to Thomas Stark, a chiropractor who examined him on February 15. On April 8, 1983, after taking time off because of his back problem, claimant's employment was terminated. After several chiropractic treatments, claimant consulted a general practitioner who referred him to an orthopedic surgeon. Claimant was referred to another orthopedic surgeon who removed a herniated disc on August 1, 1983.

On cross-examination, claimant admitted that after learning of the seriousness of his condition from the first surgeon he consulted his logs to determine the exact date that he moved furniture. The log's entry on January 21, 1983 states: "Told Mary about back pains, not her problem!" This entry is written in a different color of ink than the entry describing the work claimant performed on that date and the entries preceding and immediately following it. At hearing, claimant denied making the entry on a date other than January 21, 1983. Ms. Amick stated that claimant never told her that he was having back pain until February.

Four physicians testified regarding causation. Dr. Stark testified that claimant never mentioned the January 20 incident. Dr. Stark stated, however, that claimant mentioned having had pain in his back while carrying something heavy up a ladder. The general practitioner testified that she did not receive a history of the January 20 industrial episode. She stated that claimant indicated that his back problems were "secondary" to work. One surgeon testified that claimant stated that he had acute back pain within three days of lifting heavy furniture. This doctor testified that

the January 20 incident could have caused claimant's disc herniation but concluded that claimant would not have been able to perform the duties he indicated in his log that he performed following the episode. The second surgeon testified that claimant's disc herniation was of "recent origin" and was consistent with claimant's report that the injury occurred on January 20. He stated to a medical probability that the lifting incident caused the herniation. Although he believed it unlikely that claimant could continue to work following the herniation, he did not believe it impossible.

Administrative law judge George B. Marvel entered an award for a compensable claim. Although Marvel expressed uncertainty as to whether claimant's activities on January 20 causd the herniated disc, he was nevertheless "left with the inescapable conclusion" that claimant's work "either caused, aggravated or contributed to" the herniated disc. The employer filed a request for review. Prior to issuing a decision on review, administrative law judge Marvel retired and the case was assigned to administrative law judge Peter J. Baum. *See* A.R.S. § 23–942(B). In his award on review, administrative law judge Baum rescinded the award, finding in part:

The applicant contends that the evidence of record does establish that he sustained a low back injury while performing these specifically described lifting duties on January 20, 1983. *The preponderance of credible lay evidence does not support this contention.* The applicant has not established by a preponderance of credible evidence that he sustained any injury by accident arising out of or in the course of his employment for the defendant employer on January 20, 1983. The medical evidence linking the applicant's low back condition to his work activities of January 20, 1983 is *so weakened by lack of a credible factual background as to be insufficient to support a compensable award.*

(Emphasis added.) On appeal, claimant argues that, absent a new hearing to deter-

mine witness's credibility, the administrative law judge erred in rescinding the initial award. Claimant contends that the credibility of a witness may only be determined by the administrative law judge who listens to the testimony because it is impossible to determine a witness's credibility from a written record. We agree.

## II. ANALYSIS

The law involving substitution of "finder of fact" is speckled with divergent themes. *See generally* 3 K. Davis, *Administrative Law Treatise* § 17:17 (2d ed.1980) (Davis); 3 A. Larson, *The Law of Workman's Compensation* §§ 80.12–.12(G) (1982); Note, *Replacing Finders of Fact—Judge, Juror, Administrative Hearing Officer*, 68 Colum.L.Rev. 1317 (1968); *Annot.*, 148 A.L.R. 327 (1944). We need not, however, in this decision review all of the many nuances which present themselves in cases involving substituted fact finders. We need only decide the question before us, namely, whether in a decision upon review a substituted administrative law judge who has not observed the witnesses testify, may reverse an award where the credibility of a witness is at issue.

Where credibility is at issue, it is generally held that a hearing examiner making a recommendation to a reviewing board, agency or court must actually hear and observe the witnesses. *See, e.g., Smith v. Dental Products Co.*, 168 F.2d 516 (7th Cir.1948) (trial judge decided case from a transcript prepared by a special master who had died; the court reversed, and ordered a trial *de novo* holding that the decision on the record without seeing the witnesses was error); *Harden v. South Dakota Credit Union League, Inc.*, 87 S.D. 433, 209 N.W.2d 665, 666 (1973) (hearing held before agency whose duties were transferred to new commission; court refused to accept new commissioner's findings because he "did not conduct the evidentiary hearing and did not have the benefit of seeing and hearing the witnesses testify."); *Shawley v. Industrial Commission*, 16 Wis.2d 535, 114 N.W.2d 872 (1962) (where credibility is at issue, due process violated

if agency does not have recommendation of hearing officer who conducted the proceeding). "Normally, a proper credibility evaluation requires that the fact finder hear and observe the witness. Credibility is not readily discernible by one who merely reads a cold record." *Pigrenet v. Boland Marine & Mfg. Co.*, 631 F.2d 1190, 1191 (5th Cir.1980), *reh'g granted*, 656 F.2d 1091 (1981).

The general rule has been stated as follows:

> [T]he principle which should govern substitution of hearing officers is the simple one that demeanor of witnesses should not be lost from the case. Whoever observes the demeanor must report it to the decision makers. If demeanor is unimportant because all the crucial evidence is documentary, no such report is needed.

Davis § 17.17 at 337. For example, in *Gamble-Skogmo, Inc. v. FTC*, 211 F.2d 106 (8th Cir.1954), the court set aside a decision of the Federal Trade Commission which was based upon the recommendation of a substituted hearing officer who did not observe the proceedings. The court found that "credibility evaluation on a personal basis ... constituted a salient factor in the recommended decision." *Id.* at 117. The court held:

> [T]he recommended decision should be made by the examiner who had presided at the reception of the evidence, in order that such a material credibility evaluation as was engaged in by the substitute examiner would include the elements of having seen and having heard the conflicting witnesses testify.

*Id.* In reaching its conclusion, the court emphasized the importance of appearance and demeanor.

> [A]ppearance and demeanor on the part of orally-testifying witnesses ... are ... 'assumed to be in evidence.' And such an evaluation of credibility, therefore, in relation to oral conflicting testimony, on material matters, necessarily is of the nature and stature of any rational-

ized conclusion constituting a part of a judicial or quasi-judicial result.

*Id.* at 113 (citations omitted).

This court stressed the importance of the fact-finder's role in *Brooks v. Industrial Commission*, 24 Ariz.App. 395, 539 P.2d 199 (1975). A substitute hearing officer presided over one of several hearings. The initial hearing officer entered an award for a compensable claim and the carrier filed a motion for reconsideration. The carrier requested that the hearing officer schedule a further proceeding so that he could personally observe one of the witnesses who testified before the substitute hearing officer and "make a better judgment on credibility." *Id.* at 397, 539 P.2d at 201. The hearing officer rescinded the award for a compensable claim and ordered a further hearing to personally take the testimony of this witness. Ultimately an award for a noncompensable claim was entered. Although no issue was raised on appeal concerning the propriety of the use of the substituted hearing officer, the court, nevertheless, articulated the following concern:

> We would observe, however, in view of what such a procedure required subsequently in this case, that where the credibility of witnesses is an issue, it is almost impossible to make that judgment from a written record.

*Id.* at 397, 539 P.2d at 201. This court suggested a different result in *Larson v. Industrial Commission*, 114 Ariz. 155, 559 P.2d 1070 (App.1976). In *dicta*, the court stated that there was no absolute right to have a workers' compensation case decided by the hearing officer who actually heard the testimony. For the reasons stated herein, however, we decline to follow the broad statement set forth in *Larson.*

The function of the administrative law judge in the workers' compensation setting is akin to the function of the fact-finder in the civil arena. *See Federal Mutual Liability Insurance Co. v. Industrial Commission*, 31 Ariz. 224, 252 P. 512 (1926). Appellate courts have therefore consistently espoused the rule that the administrative law judge's assessment of the credibility of witnesses is generally binding upon the reviewing court. *E.g., Koval v. Industrial Commission*, 23 Ariz.App. 277, 279, 532 P.2d 549, 551 (1975). We have developed this rule because of our respect for the fact-finder's role recognizing that the finder of fact is far better suited than we to consider

> the tone of voice in which a witness's statement is made, the hesitation or readiness with which his answers are given, the look of the witness, his carriage, his evidences of surprise, his gestures, his zeal, his bearing, his expression, his yawns, the use of his eyes, his furtive or meaning glances, or his shrugs, the pitch of his voice, his self-possession or embarassment, his air of candor or of seeming levity.

J. Frank, *Law and the Modern Mind* 109 (1936). But the predicate upon which our deference is given to the finder of fact is the assumption that he has indeed had the opportunity to look the witness in the eye and reach a conclusion with respect to his veracity or lack thereof. If this underpinning of judicial review is withdrawn, the appellate court has been deprived of the assistance which it demands in cases of conflicting evidence. If the administrative decision-maker and this court are both reaching a decision upon the "cold record" the integrity of the legal process not only falters, it fails. In cases of conflicting evidence, meaningful appellate review requires that the conflict be resolved by something more personal than a sterile resort to pages of hearing transcripts.*

The present case demonstrates the need to have facts found by first-hand observ-

---

* We recognize that where final administrative decisions are made by agency boards or commissions, the commissioners themselves need not personally observe the witnesses. *E.g., Pollard v. Krispy Waffle No. 1*, 63 N.C.App. 354, 304 S.E.2d 762 (1983); *see Powell v. Industrial Comm'n*, 102 Ariz. 11 423 P.2d 348 (1967).

Nevertheless, a hearing examiner's findings, where demeanor is important, is a factor to be considered in assessing whether there is substantial evidence to support the agency conclusion. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 492–97, 71 S.Ct. 456, 466–69, 95 L.Ed. 456 (1951). The common thread linking all of the

ers. In this case, claimant asserted that he first experienced low back pain at the end of the work day on January 20, 1983. His work log reflects this fact but the entry is written in a different color of ink than the entry describing the work he performed on that date and the entries preceding and immediately following it. Dr. Stark, who examined claimant on February 15, 1983, testified that claimant never mentioned the January 20 incident but stated that the claimant did mention having pain in his back while climbing a ladder. The general practitioner testified that she did not receive a history of the January 20 industrial episode when she examined claimant. A surgeon testified that claimant stated that he had acute back pain within several days of lifting heavy furniture.

Clearly, the credibility of the claimant was central to the determination of this matter. There was sufficient medical testimony that claimant's back problems were related to his employment. But the crucial linkage between claimant's medical condition and his employment was provided by his description of his activities at work and in particular, those on January 20. There was clearly conflicting evidence concerning these events. Administrative Law Judge Marvel, who observed claimant testify, resolved the conflict in claimant's favor. Substitute Judge Baum, who did not have this opportunity, resolved the conflict against claimant.

We conclude that the deference we ordinarily give to an administrative law judge's assessment of credibility cannot be given in this case. We hold that it was error for administrative law judge Baum to rule upon credibility without reopening the hearing to observe claimant's testimony first-hand. By virtue of our ruling, we need not reach the other issues set forth in the opening brief.

The award is set aside.

GRANT and HAIRE, JJ., concur.

cases (where credibility is in issue), however, is the necessity for the initial fact-finder to ob-

serve the witnesses testify.