762 P.2d 574

**Richard OHLMAIER, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Arizona Feeds, Respondent Employer,**

**Fireman's Fund, Respondent Carrier.**

**No. 1 CA–IC 3705.**

Court of Appeals of Arizona, Division 1, Department A.

April 7, 1988.

Reconsideration Denied May 20, 1988.

Review Granted June 6, 1988.

Tretschok, McNamara & Clymer, P.C. by Dale D. Tretschok, Tucson, for petitioner employee.

Dennis P. Kavanaugh, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Rabinovitz & Associates, P.C. by Bernard I. Rabinovitz, Tucson, for respondent Employer and Carrier.

## OPINION

CORCORAN, Judge.

Petitioner/employee Richard Ohlmaier (claimant) seeks review of an award finding him stationary with no permanent impairment. Claimant raises two issues: first, whether the Administrative Law Judge (ALJ) erred substantively in finding no permanent impairment causally related to his industrial injury; second, whether the ALJ erred procedurally by resolving a conflict in the medical testimony when he did not personally observe the physicians testify. Because we find no abuse of discretion, we affirm the award.

### 1. Factual Background

Claimant sustained a low back injury on October 19, 1983, while hammering a feed bin with a sledge hammer in the course of his employment. His claim for benefits was accepted, and claimant was treated for the injury until December 1983, when he returned to work. He had a sharp recurrence of back pain in February 1984, again while swinging a hammer at work. He was again treated, and returned to work in March 1984. He continued to complain of back pain and was finally released from work in May 1984. He has been unable to return to his former employment since then.

The carrier terminated claimant's benefits without permanent disability effective September 11, 1985. Claimant timely protested the closure, and 3 hearings followed. The first hearing, held May 23, 1986, was before the deciding judge, Judge Terrence Kurth. At that hearing Warren D. Eddy, M.D., and claimant testified. The other 2 hearings, at which Robert T. Grimes, M.D., and John P. Utz, M.D., testified, were before nondeciding judges; thus, Judge Kurth did not preside during the testimony of the other two medical experts, although transcripts of those hearings were included in the claimant's file. Claimant's counsel was present at all 3 hearings and had the opportunity to cross-examine all adverse witnesses. However, claimant's counsel timely objected, prior to the second hearing, to the procedure of having medical testimony taken at a hearing before a nondeciding judge, and renewed his objections at both subsequent hearings.

In issuing his award, Judge Kurth summarized the testimony of all 3 testifying physicians and found a medical conflict in that testimony. He resolved the conflict by adopting the opinion of Dr. Eddy, "that the applicant does not have a permanent impairment related to the industrial injury in question," as most probably correct and well founded. On the basis of that opinion, the ALJ concluded that claimant had not met his burden of proof in showing a permanent impairment.

## 2. Causal Relationship Between Industrial Injury and Permanent Impairment

■ We first address whether the ALJ erred in finding that claimant does not have a permanent impairment related to the industrial injury. Claimant argues that because he met the standards imposed in *Cassey v. Industrial Commission,* 152 Ariz. 280, 731 P.2d 645 (App.1987), he should be entitled to proceed to a determination of his loss of earning capacity.

In *Cassey,* this court concluded that disabling pain constitutes a permanent impairment if a claimant meets his or her burden of proof to show both the causal relationship between the industrial incident and the disabling pain and a resulting inability to return to his or her former work. 152 Ariz. at 283, 731 P.2d at 648. Here, claimant has failed to show a causal relation between the industrial injury and his present pain.

At the hearing, claimant testified that he has had consistent lower back pain since the October 1983 industrial incident. All 3 medical experts testified that claimant is unable to return to his previous employment because of the pain. The medical experts differed, however, in their opinions whether the present disabling pain was causally related to the industrial injury.

Dr. Grimes concluded that claimant's present pain was causally related to the industrial injury. Dr. Utz found no objective evidence of a permanent impairment causally related to the industrial injury. Dr. Eddy testified that, although claimant could not return to his former job, his present condition was the result of his preexisting degenerative joint disease. The ALJ concluded that the "sole issue ... is whether the applicant has a permanent impairment/disability as a result of the industrial injury...." He found that a conflict existed in the medical evidence, and resolved that conflict by adopting the opinion of Dr. Eddy, that claimant "does not have a permanent impairment related to the industrial injury in question."

We will not disturb the resolution of a medical conflict against a claimant absent an abuse of discretion. *Ford v. Industrial Comm'n,* 145 Ariz. 509, 519, 703 P.2d 453, 463 (1985). We will set aside an award only if no reasonable basis supports its conclusion. *Reynolds Metal Co. v. Industrial Comm'n,* 119 Ariz. 566, 582 P.2d 656 (App.1978).

Here, Dr. Eddy testified that he did not believe claimant's present pain was a "direct result" of his industrial accident, but rather that his problems were a consequence of the "natural progression" of claimant's preexisting "advanced degenerative joint disease of his lumbar spine." Dr. Eddy had previously reported:

> The incident which he describes of using the hammer, is undoubtedly only a trivial triggering mechanism to the early symptomatic phase of his disease development. He has undoubtedly recovered from this trauma of using the hammer. At the present time his symptoms are entirely based on his pre-existing degenerative or traumatic arthritis.

When questioned about this report, Dr. Eddy explained that he believed the industrial injury caused only a "temporary aggravation" because "it's not reasonable ... this type of episode which he described could cause any permanent damage." He testified that although it "doesn't take much of anything to bring on symptoms in a back such as he has, ... I just can't conceive of it causing such a great increment of disease that it would not be recouped by a period of rest and time and symptomatic treatment." Further, although he had described the incident as a "triggering incident," and analogized it as

the "spark" that caused the "explosion," Dr. Eddy also testified that, based on reasonable probability, claimant would have had the same problems when he saw him, whether or not he had the industrial injury.

Claimant has clearly established the existence of his present pain and his resulting inability to do his former work; however, this alone will not meet his burden of proof to establish a permanent disability. *See Arellano v. Industrial Comm'n*, 25 Ariz. App. 598, 545 P.2d 446 (1976). In *Arellano*, this court emphasized the additional factors that claimant must show:

> Arizona's law of workmen's compensation is clear that where an industrial injury, operating on a preexisting disease, aggravates that disease to the extent that a workman is disabled thereby, a compensable claim exists.... But more is required in the burden of proof than merely establishing an aggravation of a preexisting disease or infirmity, and showing that the claimant was thereafter unable to work.

> Petitioner here had the burden of showing, ... that the claimed permanent disability was in fact caused, "triggered" or contributed to by the industrial injury, and was not merely the result of the natural progression of the preexisting disease. *He had to show not only that the injury caused a temporary aggravation of his preexisting degenerative arthritis, but also that the aggravation had not terminated, and that it continued to be a contributing factor to his pain.*

25 Ariz.App. at 603–04, 545 P.2d at 451–52 (emphasis added). Here, given the ALJ's resolution of the conflict in testimony in favor of Dr. Eddy's opinion, claimant has failed to carry his burden to prove the industrial injury continued to aggravate his preexisting condition, and that his present pain is not merely a natural progression of that condition. *See also Price v. Industrial Comm'n*, 23 Ariz.App. 1, 529 P.2d 1210 (1975); *Best v. Industrial Comm'n*, 21 Ariz.App. 211, 517 P.2d 1104 (1974). Similarly, Dr. Eddy's opinion, that claimant would be experiencing his present problems even if the industrial accident had not occurred, further established that claimant

failed to prove a causal relation between the injury and the present pain. *See Lamb v. Industrial Comm'n*, 27 Ariz.App. 699, 700, 558 P.2d 727, 728 (1976).

Because the testimony on which the ALJ based his opinion does not establish that the industrial injury continued to aggravate claimant's preexisting condition, we find no abuse of discretion in the ALJ's conclusion that claimant did not have a permanent impairment related to the industrial injury.

### 3. *Conflicting Testimony Before Nondeciding Judges*

■ We next address whether the ALJ erred by allowing conflicting expert testimony to be taken before nondeciding judges, and then resolving the medical conflict against those experts the ALJ did not personally observe during testimony.

Claimant argues that this court's decision in *Adams v. Industrial Commission*, 147 Ariz. 418, 710 P.2d 1073 (App.1985), requires personal observation of witnesses by the ALJ in order for a reviewing court justly to defer to the credibility conclusions of the ALJ. In *Adams*, we held that when the presiding ALJ retired, leaving another ALJ to rule on a request for review, the substituted ALJ must reopen the hearing to observe claimant's testimony if the ruling on review hinges on the credibility of the claimant. 147 Ariz. at 422, 710 P.2d at 1077. Claimant in this case seeks to extend the requirement of personal observation of a claimant's testimony to the testimony of expert witnesses. We decline to apply the *Adams* requirement of personal observation to expert witness testimony about whether the industrial injury medically caused a permanent disability.

Procedures governing a workers' compensation hearing are set forth in A.R.S. § 23–941(F), which provides:

> Except as otherwise provided in this section and rules or procedure established by the commission, the administrative law judge is *not bound by common law or statutory rules of evidence or by technical or formal rules of procedure and may conduct the hearing in any manner that will achieve substantial justice.*

(Emphasis added.) The issue, then, is whether "substantial justice" can be achieved when the deciding ALJ does not observe the testimony of 2 of the 3 conflicting expert witnesses.

In *Adams*, the substituted ALJ rescinded a prior award because he doubted the credibility of claimant's testimony that he sustained an injury on a particular date. The issue of claimant's credibility arose because a work log entry describing the reputed injury was a different color ink than the entry describing the work claimant performed on that date. *Adams*, 147 Ariz. at 422, 710 P.2d at 1077. In sum, the issue involved in the rescission of the award was whether the claimant was truthful when he testified about his alleged injury.

In contrast to *Adams*, the issue here does not involve the credibility of a testifying claimant and whether an injury took place. Rather, the unobserved testimony in this case involves conflicting medical opinions about whether an undisputed injury caused a permanent disability. Unlike *Adams*, this case does not involve a factual dispute regarding the nature or extent of claimant's injuries. Instead, all of the expert witnesses were dealing with the same factual predicate on which they based their medical opinions of causation.

In *Adams*, we stated that "[w]here credibility is at issue, it is generally held that a hearing examiner making a recommendation to a reviewing board, agency or court must actually hear and observe the witnesses." 147 Ariz. at 420, 710 P.2d at 1075. We now distinguish between the "credibility" associated with a claimant's testimony about whether an injury occurred and the "credibility" afforded expert medical opinion on causation.

When a factual dispute involves the credibility of a testifying claimant, the appearance and demeanor of the witness are important indicia of credibility. However, when the expert testimony involves the issue of medical causation, one doctor's testimony is not likely to be chosen over another's because of the doctor's appearance and demeanor before the hearing officer. Rather, other indicia of credibility are used in resolving conflicting expert medical testimony. These indicia include: whether or not the testimony is speculative; consideration of the diagnostic methods used; the qualifications and backgrounds of the experts; their experience in diagnosing the type of ailment involved; and their conscious or unconscious bias or interest in the result to be reached. *See Ison v. Western Vegetable Distrib.*, 48 Ariz. 104, 112, 59 P.2d 649, 653 (1936).

The varying significance of demeanor observation depending on the context of the testimony has been recognized by Professors Gellhorn and Byse:

As a practical matter, direct contact between the fact-finder and the witnesses who testify concerning the facts is unnecessary in many types of administrative hearings. The nature of the subject matter involved determines the likelihood of a fact-finder's conclusions being at all influenced by the witnesses' demeanor. Scientific questions (such as, for example, the curative powers of an allegedly mislabeled medicine) ... will not be decided upon the basis of the witnesses' behavior while testifying.

W. Gellhorn & C. Byse, *Administrative Law* 1056 (4th ed. 1960).

The Iowa Supreme Court has recognized that observation of a medical expert's demeanor is not a critical component of a fair hearing. *See McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181 (Iowa 1980). In *McSpadden*, the court decided that a worker was not denied a fair hearing because a deposition of a medical expert was admitted into evidence without the hearing officer having viewed the testimony. The court stated:

Absent evidence of prejudice, we have held that the concept of a fair hearing does not require that the officer who actually determines the result of the hearing be present during the taking of testimony.... Certainly in cases in which the deponent is a disinterested medical expert, we have no reason to presume prejudice from the decisionmaker's inability to observe the deponent's demeanor.

*McSpadden*, 288 N.W.2d at 197. *See also Anderson v. Oscar Mayer & Co.*, 217 N.W. 2d 531, 533 (Iowa 1974).

Although the demeanor of expert witnesses is not irrelevant and we do not condone the practice of several ALJs hearing conflicting testimony in a given case, we do not believe that demeanor evidence is so critical in this context that "substantial justice" cannot be rendered without it.[1]

Here, the resolution of a conflict in expert testimony about whether the injury caused claimant's permanent disability is the kind of scientific question that is not decided on the basis of the expert witnesses' demeanor while testifying. We thus find no abuse of discretion in the ALJ's resolution of the conflict without personally viewing all expert testimony.

For the foregoing reasons, we affirm the award.

JACOBSON and BROOKS, JJ., concur.

1. We note that the Rules of Procedure for Workers' Compensation Hearings allow medical reports to be entered into evidence. A.C.R.R. R4–13–155. Any party desiring to cross-examine the author of any report must request a subpoena in accordance with rule R4–13–141. Because a party waives the right to cross-examine absent a timely request for subpoena, the rules implicitly allow the ALJ to receive medical evidence without personally observing its author.

