NOTICE:  NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

PINAL COUNTY, *Petitioner Employer*,

ARIZONA COUNTIES INSURANCE POOL, *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

ANDREW GOODE, *Respondent Employee*.

No. 1 CA-IC 15-0041
FILED 4-7-2016

———————————————

Special Action - Industrial Commission
ICA Claim No.  20111-090234
Carrier Claim No. WC2011013296

Joann C. Gaffaney, Administrative Law Judge (Retired)
Michael A. Mosesso, Administrative Law Judge

**AWARD AFFIRMED**

———————————————

COUNSEL

Jardine, Baker, Hickman & Houston, P.L.L.C., Phoenix
By Scott H. Houston, Rae Richardson
*Counsel for Petitioner Employer and Petitioner Carrier*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent ICA*

Snow Carpio & Weekley, PLC, Phoenix
By Dennis R. Kurth
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

---

**W I N T H R O P**, Judge:

¶1        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review lifting the carrier's suspension of workers' compensation benefits.  Two issues are presented on appeal:

> (1) whether administrative law judge ("ALJ") Gaffaney erred in lifting the suspension of the respondent employee's workers' compensation benefits; and
>
> (2) whether ALJ Mosesso erred by purportedly making a credibility finding on administrative review.

Because we find no legal error and the evidence of record reasonably supports the rulings by the ALJs, we affirm.

**JURISDICTION AND STANDARD OF REVIEW**

¶2        This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rules of Procedure for Special Actions 10.[1]  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law *de novo.  Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).  We consider the evidence in a light most favorable to upholding the ALJ's award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

---

[1]        Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**FACTUAL AND PROCEDURAL HISTORY**

¶3 At the time of injury, claimant Andrew Goode worked as a detective for the petitioner employer, Pinal County Sheriff's Office ("PCSO"). He injured his right knee during an arrest while performing undercover work at a music festival. Goode filed a workers' compensation claim, which was accepted for benefits by the petitioner carrier, Arizona Counties Insurance Pool ("ACIP"). He received medical, surgical, and disability benefits. Goode's claim eventually closed with a scheduled permanent partial impairment to the right lower extremity and a supportive care award.

¶4 Along with other plaintiffs, Goode retained attorney Gary L. Lassen to file a third-party lawsuit against the music venue, other festival vendors, and the couple responsible for causing his injuries during the arrest.[2] Professional Event Management ("Pro Em"), one of the named parties, was the security company hired to provide security for the stadium where the bands performed but not the campground area where the claimant was injured. Lassen approached Pro Em's attorney, Rob Justman, with a settlement proposal. Pro Em agreed to settle the claim for $23,000 to all of the plaintiffs, solely for its nuisance value because, in Justman's opinion, his client had no liability for the injury-causing events. Releases were signed in spring 2013, and Lassen filed a notice in the superior court on June 18, 2013, dismissing Pro Em. At the time of the settlement, Justman was unaware of ACIP's workers' compensation lien.

¶5 When Lassen informed Goode of the settlement offer, Goode provided Lassen with a summary of PCSO's written policy on settlement offers via this e-mail:

> PCSO has a policy that the Sheriff must be notified 10 days prior to accepting and finalizing the settlement of a third party claim arising out of or relating to an on-duty injury. It is required the employee provide the Sheriff with written notice of the proposed terms of such settlement.

---

[2] The Arizona Workers' Compensation Act preserves the right of an injured employee to bring a lawsuit against a third party tortfeasor "not in the same employ." A.R.S. § 23-1023(A). The employer/carrier has a statutory lien on any net recovery to the extent of medical expenses and compensation benefits paid. § 23-1023(D).

In no case shall the employee accept a settlement without first providing such written notice to the Sheriff. It says it is to permit the county to determine if the offered settlement will [a]ffect any claim the county may have regarding payment for damage to equipment or reimbursement for wages against the person who caused the accident or injury and to protect the county['s] right to subrogation, while ensuring the employee[']s rights to receive such compensation for injuries are not affected.

**¶6**        Goode received $4,400 from the $23,000 settlement, which Lassen paid to him in two separate checks.[3] In May 2014, ACIP suspended Goode's workers' compensation benefits and he became aware at that time that Lassen had not negotiated or otherwise paid ACIP's lien. Goode timely protested the suspension of benefits and requested an ICA hearing.

**¶7**        The ALJ held two evidentiary hearings and heard testimony from five witnesses, including Goode, Pro Em's attorney, and ACIP's workers' compensation claims manager. Following the hearings, ALJ Gaffaney issued a decision lifting the suspension of benefits and awarding ACIP a credit of $4,400 against Goode's future compensation benefits. ACIP timely requested administrative review; by this time, ALJ Gaffaney had retired. Substitute ALJ Mosesso reviewed the record and affirmed the decision. ACIP brought this appeal.

## ANALYSIS

**¶8**        On review, ACIP argues that the ALJ erred by lifting the suspension of benefits. An employee entitled to workers' compensation benefits may also pursue a civil remedy against a third party who tortiously caused the work-related injury. A.R.S. § 23-1023(A). If an employee pursues a civil remedy, the employer or carrier responsible to pay workers' compensation has a lien on the employee's entire net recovery from the third party to the extent of workers' compensation paid. § 23-1023(D); *Liberty Mut. Ins. Co. v. Western Cas. & Sur. Co.*, 111 Ariz. 259, 262–63, 527 P.2d 1091, 1094–95 (1974). In order to settle a third-party claim for less than the compensation provided, an employee must obtain written approval

---

[3]        By this point in the litigation, counsel for ACIP had successfully moved to intervene, but did not object to the dismissal of Pro Em, or take any other steps to preserve ACIP's subrogation rights against any of the named defendants.

from the responsible employer or carrier. § 23-1023(D). The statute does not specify the penalty for failure to comply with the approval requirement.

¶9 The supreme court first interpreted this portion of § 23-1023 ("the lien statute") in *Hornback v. Indus. Comm'n*, 106 Ariz. 216, 474 P.2d 807 (1970). In *Hornback*, the claimant filed a workers' compensation claim, received nominal compensation benefits ($266.08), and did not protest the closure of his claim without permanent impairment. *Hornback*, 106 Ariz. at 218, 474 P.2d at 809. He subsequently filed a third-party tort claim for a new or previously undiscovered condition, and he settled that claim for $10,000, without approval from the self-insured employer. *Id.* When the claimant subsequently petitioned to reopen his workers' compensation claim to obtain additional workers' compensation benefits for the new and previously undiscovered condition, the ICA dismissed the petition. *Id.* at 218–19, 474 P.2d at 809–10. The supreme court affirmed the ICA's dismissal and held that the claimant's attempt to reopen his workers' compensation claim was barred as a sanction for the unapproved third party settlement. *Id.* at 219, 474 P.2d at 810.

¶10 The supreme court next considered the lien statute in *Bohn v. Indus. Comm'n*, 196 Ariz. 424, 999 P.2d 180 (2000). In *Bohn*, the claimant filed a workers' compensation claim after falling through a residential roof. *Id.* at 424, ¶ 2, 999 P.2d at 180. His uninsured employer denied having any employees, and the No Insurance Section of the ICA denied his claim for benefits. *Id.* An ALJ affirmed, and during the pendency of the appeal in this court, the claimant's attorney settled a third-party tort claim against the homeowner. *Id.* at 424–25, ¶ 2, 999 P.2d at 180–81. Although the attorney obtained the uninsured employer's permission to settle, he did not seek approval from the No Insurance Section of the ICA. *Id.* at 425, ¶ 2, 999 P.2d at 181. On remand, an ALJ found that, because of the unapproved third-party settlement, the claimant had forfeited his right to collect workers' compensation benefits. *Id.* at ¶¶ 3, 5.

¶11 This court affirmed the ALJ's forfeiture award, but the supreme court set it aside. *Id.* at 425–26, ¶¶ 6, 13, 999 P.2d at 181–82. The supreme court recognized that forfeiture was not the only sanction available for violations of § 23-1023. *Bohn*, 196 Ariz. at 426, ¶ 9, 999 P.2d at 182. Instead, it fashioned an equitable remedy—awarding the carrier a credit for an amount that depends on the reasonable value of the settlement. *Id.* at 427, ¶ 17, 999 P.2d at 183. If the settlement amount was reasonable, the carrier (or in this case, the No Insurance Section of the ICA) would have a credit up to the net settlement proceeds against future medical and disability benefits. If the settlement was not for a reasonable amount, the

credit against future medical and disability benefits would be increased to the equivalent of a reasonable settlement amount. *Id.*

¶12 The supreme court most recently addressed a violation of the lien statute in *Hendrickson v. Indus. Comm'n*, 202 Ariz. 442, 46 P.3d 1063 (2002). In *Hendrickson*, the claimant sustained a compensable injury to both of her temporomandibular joints and she received artificial joint implants. *Id.* at 443, ¶ 2, 46 P.3d at 1064. When the implants failed, she filed a civil action against her dentist, the joint manufacturer (Vitek), and the implant materials supplier (DuPont). *Id.* at ¶¶ 2–3. Vitek eventually filed for bankruptcy protection, and the claimant received a distribution from the bankruptcy court. *Id.* at ¶ 3. She later settled with both the dentist and DuPont without obtaining the workers' compensation carrier's approval. *Id.* at ¶¶ 3–4. The carrier then closed her claim with no determination of permanent impairment or supportive care. *Id.* at ¶ 5.

¶13 The claimant appealed, but an ALJ applied *Hornback* and held that her failure to comply with § 23-1023 resulted in forfeiture of any additional workers' compensation benefits. *Hendrickson*, 202 Ariz. at 443, ¶ 5, 46 P.3d at 1064. This court affirmed, but the supreme court set aside the award. *Id.* at 443, 446, ¶¶ 6, 20, 46 P.3d at 1064, 1067. It found that the claimant had only recovered a minimal amount from her third-party action compared to the substantial amount of compensation benefits to which she may be entitled. *Id.* at 445, ¶ 15, 46 P.3d at 1066. Forfeiture of compensation benefits is contrary to the remedial purpose of the workers' compensation law; accordingly, if the settlement amount accepted by the claimant proved to be unreasonably low, the equitable remedy fashioned in *Bohn* would correct the problem and, contrary to the situation in *Hornbeck*, the carrier's lien rights, in the form of a credit against the value of the net proceeds of a reasonable settlement, would be preserved. *Id.* at ¶¶ 13, 15, 46 P.3d at 1066.

¶14 In this case, ALJ Gaffaney applied this case law to the facts and concluded:

> 17. There is no dispute that applicant settled the third party lawsuit against Pro Em without the written approval of ACIP and the amount recovered is less than the amount of ACIP's lien.[4] Applicant has the burden of proof to show that the

---

4 Per the record and the ALJ's findings, ACIP paid approximately $88,000 in medical and disability benefits to the claimant while the claim was open.

> settlement was for a reasonable amount and therefore, forfeiture of benefits is not required. . . .
>
> The undersigned finds that applicant has shown that the settlement amount with Pro Em was a reasonable amount given the lack of negligence or liability on the part of Pro Em. The undersigned adopts the opinion of Rob Justman, Esq. that Pro Em was not a target in the case[] because there was no negligence, and the settlement was for "nuisance" value, only. At the hearing, Michael Warzynski, Esq. [counsel representing ACIP during the third-party lawsuit] agreed with the amount of the settlement as a reasonable amount, maybe, at the low end of reasonable. Applicant also testified that the amount was reasonable given the lack of negligence on the part of Pro Em.
>
> Also, by letter, ACIP agreed to a credit against future benefits in the amount of $11,500.00 minus reasonable sums actually incurred in obtaining these amounts. . . .

ALJ Mosesso affirmed this finding on administrative review. He also concluded that ACIP's credit against future compensation benefits would be $4,400. ACIP argues that this case is more like *Hornbeck*, and the ALJ erred in applying the equitable exception approved in *Bohn* and *Hendrickson*. We disagree. Putting aside the malpractice of Goode's attorney,[5] Goode received only a fraction of the value of his tort claim as a result of this unauthorized settlement. Counsel for ACIP had the opportunity to object to the settlement before the court dismissed Pro Em, and chose not to do so. In *Hornbeck*, it was apparent that the claimant there consciously settled the third-party claim and extinguished the carrier's subrogation rights before seeking to reopen his workers' compensation case. Here, Goode was not only aware of ACIP's lien/subrogation rights, he expressly directed Lassen to protect those rights in negotiating the potential settlement with Pro Em. On these facts, the ALJs' lifting of the

---

[5] Lassen was later disbarred as a result of his representation of Goode and other clients.

suspension of benefits and allowing ACIP a $4,400 credit against any future benefits is more than reasonably supported by the applicable law.[6]

**¶15**　　　　ACIP next argues that the award must be set aside because ALJ Mosesso made a credibility finding without observing the witnesses testify.　We agree that, in order to make an express credibility finding, the ALJ must personally observe the witnesses.　*See Adams v. Indus. Comm'n*, 147 Ariz. 418, 420, 710 P.2d 1073, 1075 (App. 1985).　But we disagree that in this case ALJ Mosesso made such a finding.　Instead, he reasonably concluded that ALJ Gaffaney had implicitly resolved the credibility issue in her award.　He recognized that she specifically adopted the testimony of attorneys Justman and Warzynski in her award and found:

> 3. . . .　It is noted in the award that no specific credibility findings are made.　However, the undersigned finds and concludes that applicant's testimony is fully supported by the testimony of counsel for defendants, Mr. Warzynski, who evaluated the lien rights in the matter.　That attorney also agreed with the attorney for Pro Em, Mr. Justman, regarding reasonableness.　This testimony supports applicant's testimony and impliedly finds credible the testimony of all three witnesses.

> 4. In general, the undersigned concludes that this is a legal issue regarding the application of the statute and the case law interpreting the statute.　A credibility finding is not necessary to the outcome in this case. . . .

ALJ Mosesso's reasoning and conclusion is well supported by the evidence of record.

---

[6]　　　At oral argument, counsel for ACIP indicated that "we want our money."　Based upon the severity of the injury described in the medical records, and the residual of chondromalacia and inevitable arthritic changes, it seems likely that ACIP will have full opportunity to utilize the credit against future benefits as approved by the ALJ.

**CONCLUSION**

¶16        The award and the decision upon review are affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama