NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TIMOTHY JOHN WALES, et al., *Plaintiffs/Appellants*,

*v.*

ARIZONA CORPORATION COMMISSION, *Defendant/Appellee*.

No. 1 CA-CV 19-0345
FILED 2-25-2020

Appeal from the Superior Court in Maricopa County
No. LC2018-000249-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

Sherman & Howard L.L.C., Scottsdale
By Brian M. Mueller
*Counsel for Plaintiffs/Appellants*

Arizona Corporation Commission, Phoenix
By Paul Kitchin
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**G A S S**, Judge:

¶1 Timothy and Stacey Wales (collectively, the Wales) appeal the superior court's order reviewing an Arizona Corporation Commission (the Commission) decision. After an administrative hearing, the Commission entered a cease and desist order and further ordered the Wales to pay restitution of $526,500, plus interest and administrative penalties. The superior court denied the Wales' request for a trial *de novo* and affirmed the Commission's orders. For the following reasons, this court affirms.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 In 2007, the Wales established Visionary Business Works, Inc. (Visionary), an Arizona company specializing in cloud-based fleet management systems. Mrs. Wales served as Visionary's president and Mr. Wales as its vice president.

¶3 In 2011, the Wales approached J.W. and Tammi Wight (collectively, the Wights) about investing in Visionary. The Wights owned an insurance company providing medical, dental, and vision insurance to Visionary. During an initial meeting, the Wales showed Mr. Wight a spreadsheet summarizing projections of Visionary's growth. Additionally, the Wights listened in on in a few phone calls between Mr. Wales and potential clients. The Wights subsequently invested $300,000 in Visionary. Mrs. Wight later executed a related subscription agreement and shares buyback agreement.

¶4 Contemporaneously with the Wight transaction, the Wales offered Javier Cano (Cano) and Jorge de las Casas (de las Casas) subscription agreements. Before the Wales offered the subscription agreements, Cano and de las Casas had been Visionary customers. In 2009, Cano and de las Casas each paid Visionary for the right to sell Visionary's software internationally. Beginning in 2010, Cano and de las Casas also served as Visionary officers and directors. Under the subscription agreements, Cano and de las Casas received stock. Their subscription

agreements provided "[t]he shares are being offered in consideration of cash in the aggregate amount of One Hundred Thirteen Thousand Two Hundred Fifty and No/100 Dollars ($113,250.00)." Each subscription agreement confirmed the $113,250 "has been paid by Shareholder to the Company as of the date of the execution of this Agreement." Cano and de las Casas both executed their subscription agreements.

¶5        The Wales did not register the securities they sold to the Wights, Cano, or de las Casas.

¶6        On June 29, 2016, the Commission's Securities Division (the Division) filed a temporary order to Cease and Desist and a Notice of Opportunity for Hearing against Visionary. The Division alleged the Wales offered and sold Cano and de las Casas each 10% shares in Visionary in consideration for their individual contributions of $113,250 for a total of $226,500. The Division also alleged the Wales offered and sold 25% shares in Visionary to the Wights in consideration of their contribution of $300,000. The total amount the Wales collected in exchange for shares in Visionary was $526,500.

¶7        The Division alleged the Wales violated A.R.S. §§ 44-1841 and 44-1842 by offering and selling these unregistered securities in Arizona. In answering the allegations, the Wales admitted "they sold securities in the form of corporate stock" to the Wights, Cano, and de las Casas but later affirmatively alleged these sales were exempt transactions.

¶8        The Division held an evidentiary hearing, which was recorded. In the hearing, the Wales put forth two arguments: (1) the transactions with Cano and de las Casas were a gift; and (2) Visionary's stock was exempt from registration with the Commission under the non-public offering exemption. After the evidentiary hearing, the parties submitted post-hearing briefs, and the Division made recommendations (the Recommended Opinion and Order) to the Commission rejecting both of the Wales' arguments. The Recommended Opinion and Order concluded the Wales failed to meet their burden of proving the Visionary stock was exempt from registration under A.R.S. § 44-1844(A)(1). The administrative law judge (ALJ) who prepared the Recommended Opinion and Order was a substitute ALJ who did not preside over the evidentiary proceedings. Before preparing the proposed decision, the substitute ALJ did review the entire record, including the recording of the evidentiary hearing. In that regard, the Recommended Opinion and Order was supported by extensive citation to the hearing transcript. Finally, the ALJ who presided over the

evidentiary hearing appeared at the Commission's hearing and answered its questions.

¶9          The Wales filed written objections to the Recommended Opinion and Order. The Commission conducted an open hearing, which also was recorded. Through counsel, the Wales presented oral arguments as to why the Recommended Opinion and Order was in error. The Commission questioned counsel for the Wales and for the Hearing Division concerning the Wales' objections. After the hearing, the Commission issued its final administrative Opinion and Order. The Commission concluded the Wales violated A.R.S. §§ 44-1841 and 44-1842. The Commission specifically found the Wales failed to prove the non-public offer exemption applied. *See* A.R.S. § 44-2033. The Commission ordered the Wales to cease and desist offering unregistered securities and ordered them to pay $526,500 in restitution, plus interest and administrative penalties.

¶10          The Wales timely appealed the Commission's Opinion and Order to the superior court and requested a trial *de novo* before a jury. The Wales argued the Commission denied them due process when it permitted a substitute ALJ who did not preside over the Division's hearing to draft the Recommended Opinion and Order. The superior court denied the Wales' motion for a trial *de novo*, finding the Commission complied with its statutory obligations and had afforded the Wales due process.

¶11          After briefing and oral argument, the superior court affirmed the Commission's Opinion and Order, concluding substantial evidence supported it. The superior court found the Wales waived the argument that the three transactions were limited public offerings. The superior court further found the Commission did not abuse its discretion when the Commission: (1) ruled Cano's and de las Casas' transactions were sales of securities; (2) ruled the three transactions were not exempt non-public offerings; and (3) set the amount of the restitution owed to the Wights, Cano, and de las Casas.

¶12          The Wales timely appealed to this court. This court has jurisdiction under A.R.S. §§ 12-120.21(A)(1)-(3).

## ANALYSIS

I.  Because the Commission's hearing process complied with Arizona law and did not violate the Wales' due process rights, the Wales are not entitled to a trial *de novo*.

**¶13**     This court reviews *de novo* constitutional and statutory interpretation claims. *Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 557, ¶ 7 (App. 2002).

**¶14**     The Wales argue the Commission's administrative hearing process was legally insufficient. The Commission argues Arizona law permits it to record its hearings stenographically. Section 12-910 provides:

> For review of final administrative decisions of agencies . . . the trial shall be de novo . . . if a hearing was not held by the agency or the proceedings before the agency were not stenographically reported or mechanically recorded so that a transcript might be made.

A.R.S. § 12-910(C). By stenographically recording the Division's hearing, the Commission's process complied with section 12-910(C).

**¶15**     The Wales also argue the Commission violated their due process rights by having an ALJ who did not preside over the evidentiary hearing draft the Commission's Recommended Opinion and Order. In support of this argument before the superior court, the Wales relied on cases in which the substituted hearing officer makes final decisions as opposed to recommendations. *See, e.g.*, *Adams v. Indus. Comm'n*, 147 Ariz. 418 (App. 1985). On appeal, the Wales rely on the same cases. The superior court rejected this argument, finding these cases to be inapposite. We agree.

**¶16**     Unlike *Adams*, the ALJ here presented a recommendation to the Commission. The Commission conducted an open hearing on the record, considered the Wales' written objections and oral argument, asked appropriate questions, and independently ruled on the matter. *Adams* said, "[w]e recognize that where final administrative decisions are made by agency boards or commissions, the commissioners themselves need not personally observe the witnesses." 147 Ariz. at 421 n.1; *see also Pine-Strawberry Improvement Ass'n v. Ariz. Corp. Comm'n*, 152 Ariz. 339, 340 (App. 1986).

**¶17**     When faced with this distinction, this court has said a hearing officer tasked with preparing a proposed order for a commission does not

have to personally attend the evidentiary hearing on which the recommendation is based. *See Pine-Strawberry*, 152 Ariz. at 340. Relying on recorded testimony is sufficient to comply with due process requirements. *Id.* "[B]ecause the [Commission], and not the ALJ, issues the final administrative decision, the Board is not bound by the ALJ's findings of fact, including those related to credibility." *Ritland v. Ariz. State Bd. of Med. Exam'rs*, 213 Ariz. 187, 191, ¶ 12 (App. 2006). Here, the substitute ALJ reviewed the record in full before issuing the Recommended Opinion and Order. However, the Commission made its final decision after conducting a hearing on the record and considering the Wales' written objections and oral argument regarding the ALJ's Recommended Opinion and Order.

¶18        The Commission's process complied with Arizona law. The Wales were afforded due process.

II.        The superior court did not abuse its discretion in upholding the Commission's decision.

¶19        When considering a challenge to the Commission's decision enforcing securities laws, this court independently reviews the administrative record to determine whether the Commission's action was unlawful, arbitrary, capricious, or an abuse of discretion. *See* A.R.S. § 12-910(E); *Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 322, ¶ 10 (App. 2017); *Shorey v. Ariz. Corp. Comm'n*, 238 Ariz. 253, 257, ¶ 11 (App. 2015); *Nutek Info. Sys., Inc. v. Ariz. Corp. Comm'n*, 194 Ariz. 107-08, ¶ 15 (App. 1998). This court considers the evidence in the light most favorable to sustaining the Commission's decision. *Hirsch v. Ariz. Corp. Comm'n*, 237 Ariz. 456, 458, ¶ 2 (App. 2015).

¶20        This court does not reweigh the evidence but instead assesses whether substantial evidence supports the decision. *E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 206 Ariz. 399, 409, ¶ 35 (App. 2003). Substantial evidence exists if the evidentiary record supports the decision, even if the record would also support a different conclusion. *Id.*; *see also Webster v. State Bd. of Regents*, 123 Ariz. 363, 365 (App. 1979). This court reviews the Commission's legal determinations *de novo. McGovern v. Ariz. Health Care Cost Containment Sys. Admin.*, 241 Ariz. 115, 118, ¶ 8 (App. 2016).

A.        The Wales sold unregistered securities to Cano and de las Casas.

¶21        The Wales challenge the Commission's finding they sold unregistered securities to Cano and de las Casas. They argue the Cano and de las Casas transactions were *bona fide* gifts, not sales.

**¶22** Substantial evidence supports the Commission's finding these transactions were sales. In their answer, the Wales admitted to selling securities—corporate stock—to Cano and de las Casas. The Wales concede this point, saying "[a]s to the Wales' answer, it says what it says." The Wales acknowledge Visionary was cash poor at that point and did not have money to give Cano and de las Casas, so they offered the unregistered securities instead. The subscription agreements say the Wales are offering the stocks in "consideration of cash" from Cano and de las Casas. Over time, Cano and de las Casas did contribute funds to Visionary. Cano and de las Casas in fact received stock.

**¶23** Substantial evidence, therefore, supports the Commission's conclusion.

   B. The offers and sales to the Wights, Cano, and de las Casas were not exempt from registration.

**¶24** Unless subject to a statutory exemption, "any note" is a security for registration purposes under Arizona law. A.R.S. § 44-1801(27)(a); *see also State v. Tober*, 173 Ariz. 211, 212–14 (1992). Generally, sale of an unregistered security is prohibited. *See* A.R.S. § 44-1841. Certain limited classes of securities are exempt from the registration requirement, as are certain transactions. *See* A.R.S. §§ 44-1843 (exempt securities), 44-1844 (exempt transactions). Qualifying for exemption requires strict compliance with all aspects of the relevant exemption provision. *See State v. Baumann*, 125 Ariz. 404, 411 (1980). The party urging exemption as a defense has the burden to prove the existence of the exemption. A.R.S. § 44-2033.

**¶25** The Wales argue the securities offers and sales are exempt from registration, relying on both the limited offering exemption and the non-public offering exemption.

**¶26** The Wales waived their limited public offering argument by not arguing it to the Commission. *See Marquette Venture Partners II, L.P. v. Leonesio*, 227 Ariz. 179, 184, ¶ 21 (App. 2011). Waiver notwithstanding, this exemption only applies to "accredited investors." The Wales do not argue Mrs Wight was in fact an accredited investor, but instead argue they reasonably believed Mrs. Wight was an accredited investor, making her $300,000 transaction exempt from registration under A.R.S. §§ 44-1841 and 44-1842. *See* A.A.C. R14-4-126(B)(1)(e)-(f). Their reasonable belief would be insufficient under the statute. At times, the Wales have taken a different tack, arguing Mrs. Wight misled them about her status as an accredited investor. The Commission concluded the evidence, including Mrs. Wight's

testimony, established Mrs. Wight did not know what it meant to be an accredited investor. Therefore Mrs. Wight could not have misled the Wales as they contend.

**¶27**　　The Wales next argue the sales are exempt from registration under the non-public offering exemption. Substantial evidence supports the Commission's finding that this exemption does not apply. The Wales bore the burden of proving they were exempt from registration under this statute. *See* A.R.S. § 44-2033. To establish the exemption, the Wales had to show strict compliance with all requirements of the statute. *Baumann*, 125 Ariz. at 411. The Wales did not.

**¶28**　　Section 44-1844(A)(1) defines the non-public offering exemption as "[t]ransactions by an issuer not involving any public offering." No controlling Arizona authority has interpreted the meaning of A.R.S. § 44-1844(A)(1). That section, however, is identical to 15 U.S.C. § 77d(a)(2). In the absence of controlling Arizona authority, and following the legislative purpose of Arizona statutes governing sales of securities, this court follows settled federal securities law to interpret this statute. *See* 1996 Ariz. Sess. Laws, ch. 197, § 11(C) (42d Leg., 2d Reg. Sess.); (statement of intent) *Sell v. Gama*, 231 Ariz. 323, 327, ¶ 18 (2013).

**¶29**　　To establish the non-public offering exemption, the Wales had to show all the offerees had enough information to be able to fend for themselves individually. *See SEC v. Murphy*, 626 F.2d 633, 647 (9th Cir. 1980). Each offeree must have access to, or disclosure of, the type of information proper registration would have revealed. *See SEC v. Ralston Purina Co.*, 346 U.S. 119, 126-27 (1953). The exemption involves the knowledge of the offerees, not the intent of the issuers. *Id.* The "financial information about the investment, similar to what would be found in a registration statement, is crucial." *Sorrel v. SEC*, 679 F.2d 1323, 1326 (9th Cir. 1982). The Wales said they had a "reasonable belief" the offerees had this knowledge. The Wales' unilateral and unsupported belief, however, is not substantial evidence Cano, de las Casas, and the Wights had the requisite knowledge.

**¶30**　　The record shows none of the offerees had such knowledge. The Commission found none of the offerees were given a written opinion of counsel regarding the offering. No offerees were given certified balance sheets or information on company officer pay. Mr. Wight said he was shown a spreadsheet listing "projections of growth" for Visionary, but he did not recall receiving a copy of the spreadsheet. Further, the Wales did not prepare a written summary of risk disclosures for the offerees. They

only included a statement in the subscription agreement saying the stock purchase involved "substantial risks." The Wales did not disclose or make available sufficient information to their offerees so the offerees could fend for themselves individually.

¶31      The Wales, therefore, did not meet their burden.

      C.     The Commission did not abuse its discretion when it ordered the Wales to pay restitution of $526,500, plus interest and administrative penalties.

¶32      The Wales raise no challenges regarding the Commission's interest and administrative penalty calculations. Their argument on appeal goes to the amount of restitution itself, $526,500.

¶33      The Commission has the authority to order restitution. A.R.S. § 44-2032(1). The goal is to restore the purchasers to their original position. *See Hirsh*, 237 Ariz. at 466, ¶ 40. The Commission's rules establish how it calculates restitution. A.A.C. R14-4-308(C)(1). The Commission looks to the "[c]ash equal to the fair market value of the consideration paid, determined as of the date such payment was originally paid by the buyer" plus interest, and minus "any principal, interest, or other distributions received on the security" from the day of purchase to the day of repayment. *See id.*

¶34      The Wales drafted the subscription agreements. Those subscription agreements document Cano and de las Casas each paid Visionary $113,250. The Wales raise the same argument here as they did before, i.e., this amount does not reflect Cano and de la Casas' true investment. Essentially, the Wales ask this court to reweigh the evidence, which we will not do. Substantial evidence supports the Commission's award.

¶35      The Wights' restitution order is also in line with the Commission's rules on restitution and supported by substantial evidence. The Wales agree the Wights invested $300,000 in Visionary, but argue the Wights made a knowing misrepresentation regarding their status as "accredited investors" during the sale process. The Commission did not agree. The record supports the Commission's findings, establishing the Wights did not know what it meant to be an "accredited investor."

¶36      The superior court did not abuse its discretion when it affirmed the Commission's restitution order. The Commission followed its own rules when calculating the restitution owed.

**ATTORNEY FEES ON APPEAL**

¶37        The Wales request attorney fees incurred in this appeal under A.R.S. § 12-348(A). Because they are not the prevailing party, this court denies their request.

**CONCLUSION**

¶38        For the foregoing reasons, the superior court's judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA